**In the Matter of UNITED THRIFT STORES, INC., Bankrupt.**

**No. B. 1218–64.**

United States District Court
D. New Jersey.

June 24, 1965.

Hyman H. Bernstein, Jersey City, N. J., and Arthur S. Lesser, New York City, for petitioner.

Robert S. Solomon, Newark, N. J., for respondent United Thrift Stores, Inc.

Max L. Rosenstein, Newark, N. J., for respondent James E. Masterson, trustee of United Thrift Stores, Inc.

AUGELLI, District Judge.

This matter is before the Court on petition of Redisco, Inc. (Redisco) for review of an order of the Referee in Bankruptcy (Referee), made on January 5, 1965, which denied Redisco's petition for reclamation of certain property from the Bankrupt herein, United Thrift Stores, Inc. (United Thrift).

On October 30, 1964, United Thrift filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. Redisco was listed in United Thrift's schedules as an unsecured creditor in the amount of $42,753.79. On November 13, Redisco filed its petition to reclaim from United Thrift certain Kelvinator appliances, or for the proceeds thereof, which totaled $36,816.44. On that date, the Referee signed an order directed to James E. Masterson, Esquire, who had been appointed Receiver for United Thrift, to show cause why that relief should not be granted.

On November 24, the Referee held a hearing on said order to show cause, and denied the petition for reclamation on the ground that United Thrift bought the appliances in question on open account, and that therefore Redisco was not a secured creditor entitled to reclamation. An order to this effect was entered on January 5, 1965. In the meantime, on December 16, United Thrift was adjudicated a bankrupt, and the Receiver, Masterson, was thereafter appointed Trustee.

Redisco filed this petition for review on January 13, 1965, and the Referee's findings of fact and conclusions of law were filed on February 23, 1965. The following are the facts disclosed by the record in this case.

Redisco is a subsidiary of American Motors Corporation, and is engaged in the business of financing Kelvinator electrical home appliances sold to distributors by the American Motors Sales Corporation. United Thrift was engaged in the business of buying Kelvinator and other brand appliances, and selling them to retail dealers.

On March 12, 1963, a financing statement, pursuant to the Uniform Commercial Code (effective in New Jersey on January 1, 1963), N.J.S.A. 12A:1–101 et seq., was filed with the Secretary of State of New Jersey. This statement covered "[i]nventory of Kelvinator appliances and products including Kelvinator refrigerators, washers, dryers, freezers, and other Kelvinator gas and electrical appliances." United Thrift was named as debtor, and Redisco as the secured party. Proceeds of collateral were also noted as being covered. There is no indication of termination of financing on the statement before the Court.

On March 22, 1963, the Secretary of State certified that he had searched his files under the Uniform Commercial Code, and found four previously recorded, secured parties for United Thrift as debtor. Redisco thereupon duly sent notices, informing the other secured party that it "has or expects to acquire a purchase money security interest in inventory of Kelvinator electrical and gas appliances * * *, which [it] * * * will from time to time deliver or cause to be delivered to United Thrift * * *."

Four separate agreements were thereafter entered into between the Kelvinator Division of the American Motors Sales Corporation, United Thrift, and Redisco. These agreements, on identical printed forms prepared by Redisco, are entitled "Redisco Wholesale Floor Plan." Each agreement contains three sections, as follows: (1) a bill of sale from the Kelvinator Division to Redisco for the articles listed by model and serial numbers; (2) a trust receipt from United Thrift to Redisco, covering the same articles and setting forth a release amount opposite each item; and (3) a signed, but incom-

pleted, promissory note from United Thrift to Redisco, which bears the same identification number as the trust receipt.

In the section labeled "trust receipt", United Thrift acknowledges the receipt of the listed appliances, acknowledges that they are the property of Redisco and will be returned to Redisco on demand, and agrees "not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said articles to any other person until after payment of amounts shown in Release Amount column below." The trust receipts do not indicate thereon that any payments have been made, or any appliances released, pursuant thereto.

The trust receipts also provide that the total release amounts are the "Amount of Promissory Note." A portion of the trust receipts further provides for terms of payment in either 90 days or one-third in 30, 60 and 90 days. The identification number, date, and total amount of each trust receipt are as follows:

| Number | Date | Total |
| --- | --- | --- |
| N77167 | 7/29/64 | $14,372.60 |
| N77168 | 7/29/64 | 13,088.65 |
| J20658 | 9/10/64 | 12,442.95 |
| J20660 | 9/24/64 | 11,939.10 |

N77167 provides for payment of one-third of the total on August, September and October 29, 1964. Redisco received two payments of $4,791.20 each from United Thrift, and entered them on its books on September 2 and October 1, 1964, respectively. The unpaid balance on this receipt is $4,581.20.

N77168 provides for full payment within 90 days, or by October 29, 1964. Redisco received two payments of $2,617.73 each from United Thrift, and entered them on September 18 and October 2, 1964. The unpaid balance is $7,853.19.

J20658 provides for payment of one-third of the total on October, November and December 26, 1964; and J20660 provides for payment of one-third of the total on November and December 1, 1964 and January 4, 1965. Redisco received no payments on these latter two trust receipts.

While Redisco has raised a number of issues in its petition for review, this Court will address itself only to the question of whether Redisco has a valid security interest, and is therefore entitled to reclamation. Since the Court is of the opinion that the Referee's conclusion, that Redisco's security interest is invalid, is clearly erroneous, it becomes unnecessary to consider the other issues on this review. See 11 U.S.C.A. § 53, Gen. Order 47; In Re Oxford Associates, 209 F.Supp. 242 (D.N.J.1962).

Under the Uniform Commercial Code as adopted in New Jersey (Code), N.J.S.A. § 12A:9–102(1) (a) provides that the Code chapter dealing with secured transactions (N.J.S.A. § 12A:9–101 et seq.) is applicable "to any transaction (regardless of its form) which is intended to create a security interest in personal property * * *." N.J.S.A. § 12A:9–102(2) specifically refers to said chapter applying to security interests created by a "trust receipt."

The term "security agreement", which is defined in N.J.S.A. § 12A:9–105(1) (h) as "an agreement which creates or provides for a security interest", is used in the Code in place of such terms as "trust receipt." A "security interest" is defined under N.J.S.A. § 12A:1–201(37) as an interest in personal property which secures payment of an obligation. Finally, N.J.S.A. § 12A:9–201 provides that "a security agreement is effective according to its terms between the parties * * * and against creditors."

The four trust receipts in this case meet the requirements of N.J.S.A. § 12A:9–203(1) (b) for a valid security agreement, since they are written agreements signed by United Thrift, grant security interests in collateral, and contain a description of said collateral. The financing statement between Redisco and United Thrift also meets the filing requirements in N.J.S.A. § 12A:9–401 et seq. Pursuant to N.J.S.A. § 12A:9–204 (1), the security interests herein attached when the agreements were made, value was given, and United Thrift re-

ceived possession of the collateral. Under N.J.S.A. § 12A:9–302 and N.J.S.A. § 12A:9–303(1), said security interests were perfected when they attached.

■ The financing statement in this case between Redisco and United Thrift was executed and filed prior to the making of the security agreements. The Trustee contends that an agreement for the creation of a security interest must be in existence prior to the filing of a financing statement, because under N.J.S.A. § 12A:9–204(1) a security interest cannot attach until there is an agreement that it attach.

This Court finds no such requirement in the Code. N.J.S.A. § 12A:9–402(1) provides that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches." Under N.J.S.A. § 12A:9–303 (1), where the financing statement is filed before the security interest attaches, the security interest is perfected when it does so attach. Thus, the Code clearly contemplates that the financing statement may be filed prior to the making of the security agreement, and that a security interest need not be in existence at the time the financing statement is filed.

■ In holding Redisco's security interest invalid, the Referee concluded that

"The 4 separate trust receipt agreements were contradictory in that provisions for credit on a 30, 60 and/or 90 day basis were included therein. The fact that Redisco, Inc. made no effort to enforce the provisions of the agreements which set up a trust, and the fact that United Thrift Stores, Inc. made, and Redisco, Inc. accepted, payments on the 30, 60 and/or 90 day basis, show that the parties both understood that the agreements provided for sales on open account."

However, the Code contains no requirements with regard to method of payment affecting the validity of a security interest. See N.J.S.A. § 12A:9–203 (1) (b). In fact, N.J.S.A. § 12A:9–205 provides that a "security interest is not invalid * * * by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral." Thus, under the Code, payment is not relevant to the question of validity of a security interest, and there is no requirement of "policing" of collateral by the secured party.

■ Moreover, this Court does not agree that payment of release amounts and payment on 30–60–90 day terms are contradictory methods of payment. The only testimony in this case regarding payment was given by James K. Marlowe, the authorized agent of Redisco in this matter, who was the sole witness at the hearing. He testified that each term payment was applied to reduce the total indebtedness of the particular trust receipt, and not to release particular appliances. Thus, the release amount of each appliance was reduced proportionately by the term payments that were received, but no single appliance was released because none of the trust receipts was fully paid. Redisco's security interest in the collateral was thereby protected while any part of the total indebtedness on each agreement remained unpaid.

■■ Since Redisco's security interests are valid under the Code, and since United Thrift is in default by reason of its failure to make payments as provided in the security agreements, Redisco is entitled to take possession of the collateral, or to obtain the proceeds thereof. N.J.S.A. § 12A:9–503 and N.J.S.A. § 12A:9–306. Since Redisco's security interests attached and were perfected prior to the filing of the Chapter XI petition, Redisco's rights thereto take priority over the rights of the Trustee.

Under the circumstances, the order of the Referee in denying Redisco's reclamation will be reversed. Counsel for Redisco, on notice to counsel for United Thrift and counsel for the Trustee, will submit an appropriate order.