In the Matter of UNITED THRIFT STORES, INC., Debtor.

**REDISCO, INC.**

v.

**UNITED THRIFT STORES, INC., Debtor, and James E. Masterson, Trustee, Appellants.**

No. 15629.

United States Court of Appeals Third Circuit.

Argued March 25, 1966.

Decided July 6, 1966.

McLaughlin, Circuit Judge, dissented.

Robert S. Solomon, Newark, N. J., (James E. Masterson, Newark, N. J., Pro Se, and Seymour J. Solomon, Newark, N. J., on the brief), for appellants.

Arthur S. Lesser, New York City (Hyman H. Bernstein, Jersey City, N. J., on the brief), for appellee.

OPINION

Before KALODNER, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

**12**

KALODNER, Chief Judge.

Prior to its bankruptcy United Thrift Stores, Inc. purchased Kelvinator appliances from Redisco, Inc., financing subsidary of the American Motors Corporation which manufactured them.

Subsequent to the bankruptcy Redisco sought to reclaim from the bankrupt estate certain Kelvinator appliances or the proceeds of their sale. The Bankruptcy Referee denied the reclamation claim and the District Court reversed, 242 F.Supp. 714 (D.N.J.1965). This appeal by the bankrupt estate and its Trustee followed.

The District Court premised its disposition on its holding that "trust receipts" relating to the transactions between the bankrupt and Redisco constituted enforceable security agreements under the Uniform Commercial Code as adopted by New Jersey, N.J.S.A. 12A:1–101 et seq.

On this appeal, bankrupt contends that it purchased the appliances from Redisco on "open account" and that (1) the "trust receipts" did not constitute security agreements because "they do not show an intention to give Redisco a secured status or a security interest"; (2) "the instruments themselves and the acts and conduct of the parties negate an intent to create a security agreement"; and (3) no "value" was given to the bankrupt for its execution of the "trust receipts".

The following facts are undisputed:

On March 12, 1963, a financing statement was filed with the Secretary of State of New Jersey, pursuant to the provisions of the Uniform Commercial Code ("Code"), N.J.S.A. 12A:9–401.[1] The statement covered "inventory of Kelvinator appliances". It named United Thrift as debtor, and Redisco as the secured party, and stated that proceeds of collateral were also covered.

On March 22, 1963, the Secretary of State certified that he had searched his files under the Code and found four previously recorded secured parties listing United Thrift as debtor. Redisco then sent notices to these other parties stating that it "has or expects to acquire a purchase money security interest in inventory of Kelvinator electric and gas appliances * * * which [it] will from time to time deliver or cause to be delivered to United Thrift. * * *"

Between July 29, 1964 and September 24, 1964, four separate agreements were entered into between the Kelvinator Division of the American Motors Sales Corporation (a subsidiary of American Motors Corporation), United Thrift and Redisco. Each agreement contained three sections, as follows: (1) a bill of sale from the Kelvinator Division to Redisco for the articles listed by model and serial numbers; (2) a trust receipt from United Thrift to Redisco, covering the same articles and setting forth a release amount opposite each item; and (3) a signed, but incompleted, promissory note from United Thrift to Redisco, bearing the same identification number as the trust receipt.

In the section captioned "trust receipt", United Thrift acknowledged receipt of the listed appliances and further acknowledged that they were the property of Redisco and would be returned to Redisco "on demand". United Thrift further agreed in the trust receipt, "not to sell, loan, deliver, pledge, mortgage or otherwise dispose of said articles to any other person until after payments shown in Release Amount column below".

The trust receipts also provided that the total release amounts are the "Amounts of Promissory Note." One of them provided for full payment in 90 days; the remaining three provided for payment in installments at the end of 30, 60 and 90 days. Redisco received two partial payments on the trust receipt calling for payment in full in 90 days. It also received two of the three installment payments due on one of the trust receipts calling for payment in 30, 60 and 90 days.

---

1. The Code became effective in New Jersey on January 1, 1963.

It received no payments on the two remaining trust receipts. United Thrift did not pay a single "release amount" at the time it disposed of the appliances nor did Redisco seek to enforce the requirement of payment of "release amount" at the time an appliance was sold.

An inspection of collateral was made by Redisco on October 27, 1964 at which time several units of collateral were found to be missing.

On October 30, 1964 United Thrift filed a petition for arrangement under Chapter XI of the Bankruptcy Act. Redisco was listed in United Thrift's schedules as an unsecured creditor in the amount of $42,753.79.

On November 13, 1964, Redisco filed its petition to reclaim certain Kelvinator appliances, or the proceeds thereof, which totaled $36,816.44.

On December 16, 1964 the Bankruptcy Referee adjudicated United Thrift a bankrupt, following its failure to proceed with a plan for arrangement, and appointed James F. Masterson, Esq. as Trustee.

The Referee subsequently denied the reclamation petition on his holding that United Thrift had purchased the appliances on open account and accordingly Redisco did not have a security interest under its trust receipts. He premised his holding on his determination that (1) the "trust receipt agreements were contradictory in that provisions for credit on a 30, 60 and/or 90 day basis was included therein"; (2) Redisco "made no effort to enforce the provisions of the agreement which set up a trust"; and (3) the making and acceptance of "payments on the 30, 60 and/or 90 day basis show that the parties both understood that the agreements provided for sales on open account".

In reversing the Bankruptcy Referee, the District Court held that (1) the trust receipts satisfied the requirements of N.J.S.A. 12A:9-201 which provides that "a security agreement is effective according to its terms between the parties * * * and against creditors"; (2) the "payment of release amounts and payment on 30-60-90 day terms", are not "contradictory methods of payment"; and (3) failure of Redisco to enforce "release payments" and to "police" the collateral did not evidence an intention to sell the appliances on open account.

We agree with the view of the District Court, and reject the contention of the bankrupt that the trust receipts were not valid security agreements under their terms and/or by reason of the conduct of the parties in their enforcement and lack of enforcement.

Nor do we agree, for reasons subsequently stated, with the bankrupt's contention, advanced for the first time on this appeal, that no "value" was given to the bankrupt for the execution of the trust receipts.

The trust receipt is specifically recognized by the Code as one type of agreement to create security interests. N.J. S.A. 12A:9-102(2).

N.J.S.A. 12A:1-201(3) defines an "agreement" as follows:

> " 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance * * *."

■ The "language" in the four receipts here in terms creates a security interest. The form used follows the model of a trust receipt.[2] It meets the minimum requirements of the Code in that there is a writing signed by United Thrift granting security interests in specifically described merchandise to Redisco. N.J.S.A. 12A:9-110 and 9-203 (1) (b).

It is clear from the "language" of the agreement that the parties to it intended that Redisco should be endowed with a security interest in the merchandise listed therein within the meaning of N.J.S.A. 12A:9-107. As earlier noted, Redisco gave notice to other secured creditors of

---

2. See Form 9.01 in 9 Nichols, Cyclopedia of Legal Forms, Annotated (1963).

United Thrift, listed in the search of the Secretary of State, in order to protect its security interest as required by N.J.S.A. 12A:9–312(3).

██ The fact that one of the trust receipts called for payment in full in 90 days and the other three for payment in 30-60-90 days did not operate to convert the dealings of the parties into sales on open account. The bankrupt's contention that provisions for payment of release amounts and installment payments are contradictory is without merit.

A release amount provision coupled with installment payments of the total obligation incurred is in the form suggested by Nichols, supra, note 2.

As Judge Augelli stated in his opinion below:

"Moreover, this Court does not agree that payment of release amounts and payment on 30-60-90 day terms are contradictory methods of payment. The only testimony in this case regarding payment was given by James K. Marlowe, the authorized agent of Redisco in this matter, who was the sole witness at the hearing. He testified that each term payment was applied to reduce the total indebtedness of the particular trust receipt, and not to release particular appliances. Thus, the release amount of each appliance was reduced proportionately by the term payments that were received, but no single appliance was released because none of the trust receipts was fully paid. Redisco's security interest in the collateral was thereby protected while any part of the total indebtedness on each agreement remained unpaid." (242 F.Supp. at 717)

The real substance of the bankrupt's position is that assuming arguendo that the trust receipts in terms created a security interest that the conduct of the parties invalidated what would have been an enforceable security agreement, and as a consequence merchandise was sold on open account. The bankrupt premises its view on the circumstances that (1)

appliances were sold by it without compliance with the payment of "release amounts" provided in the trust receipts; (2) payments made by the bankrupt were simply credited in reduction of its entire indebtedness and not against particular items; and (3) Redisco did not "police" the inventory as it was sold off.

██ The Uniform Commercial Code was designed to bring the body of commercial law into the contemporary world of business. N.J.S.A. 12A:1–102(2) (a). It would hardly be consistent with that design, accepted by New Jersey by enactment of the Code, to reestablish in new form limitations which reflect a passion for legal technicality over commercial reality.

Had the parties designated their arrangement, in drafting the security agreement, as an inventory financing arrangement, with terms for repayment set at 30-60-90 days, the Code makes it perfectly clear that this would be a valid security interest in Redisco, valid against all creditors, real or hypothetical, including the Trustee in Bankruptcy. N.J.S.A. 12A:9–109(4), 9–201, 9–203(1), 9–205, 9–301, 9–303.

██ The Code has eliminated the older, technical and restricted categories of security agreements. Gone are the definitional difficulties and transactional fictions of the chattel-mortgage, the conditional sale, the trust receipt. In their stead is a general set of rules for the creation of a security interest in the secured party.

 If it could be alleged that there were fraud, actual or implied by law, in calling a transaction a trust receipt when in fact it was a general inventory financing transaction this court would be confronted with a different problem. But no such allegation has been made. We agree with the District Court that the failure to adhere to the form of the trust receipt does not render this sale one on open credit. The parties conducted themselves wholly consistently with an inventory security transaction. As the

District Court correctly stated, the Code position is perfectly clear that a security interest is not invalid because of failure of the secured party to police the conduct of the debtor. N.J.S.A. 12A:9–205.

■ In this Court bankrupt presents a contention not advanced in the Court below. It urges that one of the prerequisites of attachment of a security interest under the Code has not been met, that is, that no value had been advanced by Redisco at the time that the security agreement was signed. N.J.S.A. 12A:9–204(1). This argument rests on the fact that the bill of sale of the appliances from American Motors to Redisco is dated subsequent to the time that American Motors shipped the appliances by straight bill of lading to the bankrupt and subsequent to the date of execution of the security agreement. One of the Referee's findings, unchallenged by the bankrupt, was that the sale was by Redisco to the bankrupt. This seems entirely correct, and by that sale, on credit, value was advanced as required by the Code. N.J.S.A. 12A:9–204(1), 9–107. In short, the belated argument now advanced is not sound.

For the reasons stated the Final Judgment of the District Court will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

There is no indication in this record that the findings of fact by the Referee are clearly erroneous. Actually the facts not only fail to show intent by the parties to create a security interest in appellee but strongly point to the fact that the sales involved were recognized by the parties as an open account between them. The record fails to show any security interest of appellee attaching to the collateral under N.J.S. 12A:9–204, or that there was any proof of value given by Redisco to the bankrupt. It follows that Redisco had no valid lien against the Trustee of United Thrift Stores, Inc. and that the Referee properly denied Redisco's petition for reclamation. I would reverse the decision of the District Court and remand for entry of judgment in favor of the bankrupt and its Trustee.