In the Matter of Benjamin Frank MANN, Sr. t/a Huffman Music Company, Bankrupt.

No. 68–BK–436–R.

United States District Court, W. D. Virginia, at Roanoke.

Oct. 26, 1970.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., Edwin J. Slipek, Small Business Administration, Richmond Va., for Small Business Administration.

T. H. Kemper, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for Security National Bank.

F. S. Pulley, III, Roanoke, Va., for trustee.

## OPINION

WIDENER, District Judge.

This is a proceeding on a petition filed by the Small Business Administration to review an order of the Referee in Bankruptcy, as provided under § 39 (c) of the Bankruptcy Act, 11 U.S.C., § 67(c). The issue for determination regards the priority of liens on inventory and accounts receivable of the bankrupt.

The material facts are undisputed. In an apparent effort to secure repayment of its loans to bankrupt, Security National Bank, (hereinafter "Bank"), on January 5, 1966, duly filed a financing statement in accordance with §§ 9–302(1) and 9–401(1) (c) of the Uniform Commercial Code, as adopted in Virginia. Virgina Code Ann., §§ 8.9–302 (1), 8.9–401(1) (c) (added vol. 1965). Entitled "Financing Statement" and signed by Bank and bankrupt, the form used [1] substantially follows that suggested in § 8.9–402(3) and sets out the following description of property purportedly covered as collateral:

> "Inventory of new pianos, organs, including hi-fidelity equipment and stereo tape recorders, as well as all other miscellaneous inventory including but not limited to the above items together with all documents of title representing such collateral as well as accounts receivable and contract rights now in existence or hereafter arising or acquired."

Bank filed with the referee some nine proofs of claim alleging its position as a creditor secured by the above collateral. Attached to each claim is a copy of the financing statement and copies of certain trust receipts executed by bankrupt on various occasions subsequent to January 5, 1966. The trust receipts list as collateral particular organs and other items of musical equipment, describing each item by make, model and serial number.

---

1. The form is set out in an appendix to this opinion.

Each sets forth an amount secured by the listed collateral and reflects payments made and the balance owed by bankrupt. Each is entitled "Note and Trust Receipt" and contains the following language:

"The foregoing promise to pay is for new value, and as security therefor a security interest in and title *to the personal property described above* and all its attachments * * * have passed and are hereby confirmed and assigned to (Bank), * * *." [Italics added.]

One of the trust receipts, dated July 3, 1968, bears the notation "(Renewal of note dated 5/12/66)". A representative of Bank also testified that Bank had been extending credit to bankrupt prior to January 1, 1966.

On December 2, 1966, bankrupt executed a security agreement with petitioner, the Small Business Administration (SBA), whereby he granted to the latter a security interest in accounts receivable and inventory. A financing statement reflecting this agreement was duly filed by the SBA on January 12, 1967, approximately one year after Bank had filed its financing statement. The SBA submitted the foregoing instruments in support of its proof of secured claim.

■ Where, as here, conflicting security interests are claimed in the same collateral and both are perfected by filing, priority is determined in the order of filing. § 8.9–312(5) (a). Bank having filed its financing statement first, the referee correctly confined himself to the question of whether Bank's claimed lien was otherwise valid. The SBA urged that Bank's lien was unenforceable on the ground that Bank had failed to produce a written security agreement creating or providing for its alleged security interest in general inventory and accounts receivable, as required by § 8.9–203(1) (b). Bank took the position that its financing statement met all the statutory requirements of a security agreement and was intended by the parties to serve as such.

The referee conceded that Bank's lien did not "succinctly comply" with the provisions of the Code regarding security agreements. Noting, however, that the Code is to be "liberally construed," § 8.1–102(1), he found that Bank had complied "substantially" with those provisions. Reasoning that Bank's financing statement and trust receipts, read together, constituted a *security agreement* as that term is contemplated in the Code, he concluded that Bank had sufficiently established a valid, enforceable security interest in all of the general inventory and accounts receivable of bankrupt. For reasons which follow, this court is of opinion that the referee erred in so concluding and that his decision must therefore be reversed.

■ In support of its position that the financing statement filed by it suffices also as a security agreement, Bank points out that § 8.9–402(1) permits a copy of a security agreement which contains the requisite information to be filed as a financing statement. However, the crucial and concededly difficult question is whether the financing statement filed by Bank, taken by itself or in conjunction with the trust receipts, may be given effect as a security agreement. The Code makes no provision for a naked financing statement to be enforced as a security agreement. The fair import of its relevant provisions is that a financing statement, so entitled and in its usual statutory form and disclosing no terms of a security agreement, does not additionally serve as a security agreement.

A security agreement is defined in § 8.9–105(h) as " * * * an agreement which creates or provides for a security interest." *Agreement* is further defined as follows:

" '*Agreement*' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance * * *. *Whether an agreement has legal consequences is determined by the provisions of this act,*

* * *." § 8.1–201(3) [Latter emphasis supplied.]

A security interest is said to *attach* as soon as there is *agreement* (as defined above) that it attach, value is given, and the debtor has rights in the collateral. § 8.9–204(1). However, a security interest is not *enforceable* against the debtor or third parties unless

" * * * (a) the collateral is in the possession of the secured party; or

(b) the debtor has signed a security agreement which contains a description of the collateral * * *." § 8.9–203(1).

The latter subsection (b) is described in the official comment to § 8.9–203 as being in the nature of a Statute of Frauds, one purpose of which is evidentiary; that is, to minimize " * * * the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." § 8.9–203, official comments 3, 5.

On the other hand, a financing statement, by which a security interest is said to be *perfected*, serves a different purpose. It is simply a notice that the secured party who has filed it may have a security interest in the collateral which the statement describes. See § 8.9–402, official comment 2. In fact, it may be filed even before a security agreement has been made or a security interest has otherwise attached. § 8.9–402(1). Thus, it was said in Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 380 F.2d 355, 356 (4th Cir. 1967), that the filing of a financing statement is " * * * but * * * a single step in the means by which the rights and priorities of a secured party are 'perfected'." In *Mid-Eastern*, as here, reliance for a secured claim was placed upon a duly filed financing statement. Citing *inter alia*, § 8.9–203(1) (b), the court there ruled that a financing

statement did not create a security interest and concluded:

"As the appellant can proffer no writing signed by the debtor giving, even sketchily, the terms of the security agreement, (his security interest) is unenforceable." 380 F.2d, at 356.

The position taken by the Fourth Circuit in *Mid-Eastern* appears to represent the prevailing view in other jurisdictions.[2] See, e. g., Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, 7 U.C.C. Rep. 730 (Iowa Sup.Ct.1970); In re Vaillancourt, 7 U.C.C. Rep. 748 (Bankruptcy Ct., D. Maine, 1970); In re Rand, 6 U.C.C. Rep. 1129 (Bankruptcy Ct., D.Maine, 1969); General Electric Credit Corp. v. Bankers Commercial Corp., 244 Ark. 984, 429 S. W.2d 60 (1968); M. Rutkin Elec. Supply Co. v. Burdette Elec., Inc., 98 N.J.Super. 378, 237 A.2d 500 (1967); Cain v. Country Club Delicatessen, 25 Conn.Sup. 327, 203 A.2d 441 (1964); American Card Co. v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150 (1963).

However, Bank urges and the referee held that *Mid-Eastern* and similar cases are distinguishable from the case at bar in that the former involve situations in which no writing other than the financing statement itself was proffered to substantiate a secured claim. Here, it is pointed out, Bank holds properly executed trust receipts, one of which indicates that it was a renewal of a previous note. As noted hereinbefore, there was also oral testimony to the effect that several of the other trust receipts were also renewals. The referee concluded that " * * * collateral set forth in financing [statement] and collateral set forth in trust receipts were hypothecated for total of loans due Bank."

It is provided in § 8.9–102(2) that Title 8.9 applies to security interests created by trust receipt. Thus, the requirement of a written security agreement in § 8.9–203(1) (b) may be

2. See also Bunn et al., An Introduction to the Uniform Commercial Code, § 4.6 (Student's ed., 1964), wherein the authors conclude that a security interest which has "attached" and is "perfected" by filing may nevertheless be unenforceable because of failure to comply with § 9–203(1) (b).

satisfied by an instrument which takes the form of a trust receipt. See In re United Thrift Stores, Inc., 363 F.2d 11 (3rd Cir. 1966). The SBA concedes the validity of the present trust receipts as security agreements but urges that Bank's security interest thereby extends only to the particular items of inventory listed thereon as collateral. This court agrees with that contention.

■ Under § 8.9–201, "* * * a security agreement is effective *according to its terms* between the parties, * * * and against creditors." [Emphasis supplied.] Thus, it was held in In re United Thrift Stores, *supra,* that a trust receipt granting security interests in specifically described merchandise endowed the secured party " * * * with a security interest *in the merchandise listed therein* * * *.*" 363 F.2d 11, 13 [emphasis supplied]. The trust receipts in the case at bar nowhere describe or refer to the claimed collateral—accounts receivable and general inventory. Each does describe the debt and particular items of personalty. The fact that several of them may have been executed as renewals of previous notes would not operate to expand the terms of the trust receipts to include upspecified inventory and accounts receivable. Nor would the financing statement, the only other document reciting collateral other than that specified in the trust receipts, be thereby converted into a security agreement which satisfies the requirements of the U.C.C. A financing statement cannot add collateral not described in the security agreement. In re Burkhard, 6 U.C. C.Rep. 244 (Bkrptcy.Ct., S.D.Ohio 1969); In re *Schreiber,* 7 U.C.C.Rep. 365 (Bkrptcy.Ct., W.D.Wis.1969).

■ In short, this court is of the opinion that *Mid-Eastern, supra,* forecloses Bank's reliance upon its financing statement as a security agreement. The trust receipts held by Bank are valid security agreements which, along with the financing statement, constitute a lien in favor of Bank upon the particular items of inventory which they list. The SBA holds a lien upon bankrupt's accounts receivable and inventory other than those items listed on Bank's trust receipts. As between the Bank and the SBA, the Bank is first in priority as to the particular items described in the trust receipts, and tne SBA is first in priority as to the other items of inventory and accounts receivable.

Viewed in terms of equitable principles, the result reached may seem harsh at first glance. Bank apparently thought its lien enforceable upon filing of the financing statement. The SBA had constructive notice thereby that a security interest was claimed and thus is not in the position of an innocent party. Rather, as the First Circuit Court of Appeals so aptly observed in a case involving a similar issue,

" * * * the result is commanded not by fireside equities but by the necessary technicalities inherent in any law governing commercial transactions. * * * [T]o the extent that the legal significance of documents may be varied and enlarged by other documents evidencing an understanding of the immediate parties to a transaction, we suspect that the law of commercial transactions will not achieve [its] stated purposes. The basis of the trouble here is that appellee used an inappropriate form to do what it apparently wished." Safe Deposit Bank & Trust Co. v. Berman, 393 F.2d 401, 402, 404 (1st Cir. 1968).

Since the Uniform Commercial Code is not ambiguous on the subject, and the great weight of authority is consistent with the construction here adopted, there is no reason to relax the clear requirements of the statute. Although Virginia has not decided the point, it is the opinion of the court that decisions by the Virginia courts would be in accord.

The decision in this case is limited to the relative priorities between the Bank and the SBA.

An order is this day entered reversing the decision of the Referee and remanding the matter to the Bankruptcy Court for action consistent with this opinion.

## APPENDIX

Financing Statement

To: File No.

——— State Corporation Commission

——— Clerk of the ——————— Court,

——— ———————, Virginia

Please file this financing statement pursuant to the Uniform Commercial Code. Kindly send us a receipt as evidence of filing indicating the File Number thereon.
Filing fee attached.

Name of Debtor Complete address

Secured party

This Financing Statement covers the following property:

Proceeds and products of the above collateral and any returned or repossessed goods are also covered.

(If collateral is goods which are or are to become fixtures)

——— The above described goods are affixed or to be affixed to (describe real estate and give names of owners of record):

(If collateral is crops)

——— The above listed crops are growing or are to be grown on (describe real estate and give names of owners of record):

Signature of Debtor Signature of Secured Party

By: ——————— By ———————

 Title ———————