E. R. EVANS, PLAINTIFF v. W. B. EVERETT, EARLY & WINBORNE, INC., AND STANDARD BRANDS, INC., NATIONAL PEANUT CORPORATION, A DIVISION OF STANDARD BRANDS, ORIGINAL DEFENDANTS

— AND —

SHIRLEY PIERCE, MARION ODOM AND LEBRON MORRIS, OWNERS OF FARMERS TOBACCO WAREHOUSE, AND FARMERS COOPERATIVE EXCHANGE, ADDITIONAL DEFENDANTS

No. 706SC618

(Filed 24 February 1971)

1. Uniform Commercial Code § 71— security interest in farm crops — insufficiency of documents to create enforceable security interest

A promissory note containing the words "This note is secured by Uniform Commercial Code financing statement of North Carolina," together with financing statements containing (1) a description of the cropland serving as collateral for the note and (2) the words "same securing note for advanced money to produce crops for the year 1969," held insufficient to create an enforceable security interest in the crops. G.S. 25-9-105(1)(h); G.S. 25-9-203(1)(b).

2. Uniform Commercial Code § 1— purpose of the code — uniformity of the law

One of the purposes of the Uniform Commercial Code is to make uniform the law among various jurisdictions. G.S. 25-1-102(c).

3. Uniform Commercial Code § 73— security agreement — grant of the security interest

A security agreement under the Uniform Commercial Code must contain a grant of the security interest. G.S. 25-9-105(1)(h).

APPEAL by plaintiff from Copeland, Special Superior Court Judge at the July 1970 Term of HERTFORD Superior Court.

Plaintiff instituted this action against the original defendants to recover on a promissory note which he alleged was secured by a Uniform Commercial Code financing statement. Farmers Cooperative Exchange and Shirley Pierce, Marion Odom and Lebron Morris, owners of Farmers Tobacco Warehouse, were made additional defendants upon motion of defendant Early & Winborne, Inc. The allegations of the complaint are, in substance, as follows. The defendant Everett executed a note and delivered it to the plaintiff on 23 January 1969. By the terms of the note, Everett promised to pay the plaintiff $75,000.00 by or on 15 November 1969. The note contained the

following statement: "This note is secured by Uniform Commercial Code financing statement of North Carolina." On 24 January 1969 instruments entitled "Financing Statement" were filed in the office of the Register of Deeds for Bertie and Hertford Counties. These financing statements contain the names and addresses of the debtor and the secured party. They also contain a description of the land on which the crops are to be grown (the sufficiency of which is not questioned on this appeal) and they are signed by both the creditor and the debtor. Following a description of the collateral, the following language appears: " . . . same securing note for advanced money to produce crops for the year 1969." Everett owes plaintiff $24,418.57 on the note, and plaintiff seeks to recover from the defendant purchasers of the crops.

All the defendants except Everett moved to dismiss the complaint on the grounds that it did not state a claim upon which relief could be granted. From the granting of the motion, plaintiff appealed.

*Pritchett, Cooke and Burch by J. A. Pritchett, W. L. Cooke and S. R. Burch for plaintiff appellant.*

*White, Hall and Mullen by Gerald F. White and Philip P. Godwin for original defendant appellees Early & Winborne, Inc.*

*Revelle and Burleson by L. Frank Burleson, Jr., for original defendant appellees Standard Brands, Inc., and National Peanut Corporation.*

*Jones, Jones and Jones by Carter W. Jones and L. Bennett Gram, Jr., for additional defendant appellees.*

VAUGHN, Judge.

[1] The only question requiring an answer in order to dispose of the appeal is whether the complaint discloses that plaintiff has an enforceable security interest in the crops sold by Everett. We hold that it does not and, therefore, the motion to dismiss for failure to state a claim upon which relief can be granted was properly allowed.

[2] The law applicable to this case is found in the Uniform Commercial Code, N. C. Gen. Stat. 25-1-101 *et seq.* Because the Uniform Commercial Code is a relatively recent enactment in

North Carolina, it is not surprising that this is a case of first impression in this jurisdiciton. In the course of our research and writing, we have read and cited many cases from other jurisdictions including some opinions by referees in bankruptcy and by the Federal District Courts. We do not necessarily regard such cases as authoritative in this jurisdiction, but we have looked to them for guidance and explanation, remembering that one of the purposes of the Uniform Commercial Code is "to make uniform the law among various jurisdictions." N. C. Gen. Stat. 25-1-102(c).

In theory, the method used to perfect a security interest in farm products under the Code is a system of notice filing. A financing statement must be filed in the office of the register of deeds in the county in which the debtor resides and in the county in which the crops are to be grown. N. C. Gen. Stat. 25-9-401(1)(a). The requirements for a financing statement in effect at the time of this transaction are found in N. C. Gen. Stat. 25-9-402(1):

> "A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner or record lessee thereof. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties."

A brief explanation of the notice filing system is found in Official Comment 2 to N. C. Gen. Stat. 25-9-402:

> "This Section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before

the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9-208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure. Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where other types of collateral are involved, the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution."

As a result of the notice filing system, "[u]nder Article 9 a financing statement may be filed by the parties in the anticipation of a loan, which is never consummated. The mere filing of a financing statement, therefore, does not necessarily indicate that a security interest exists." *In re Freese*, 2 U.C.C. Rep. Ser. 656 (E.D. Pa. Ref. in Bankruptcy, 1964).

[3] The parties do not question, and because of our disposition of the case, it is unnecessary to decide whether the instrument entitled "Financing Statement" fulfills the requirements of N. C. Gen. Stat. 25-9-402(1). Assuming but not deciding that an adequate financing statement has been filed in the appropriate places, there is an additional requirement for an enforceable security interest: A security agreement must exist which complies with N. C. Gen. Stat. 25-9-203(1)(b):

" . . . [A] security interest is not enforceable against the debtor or third parties unless (b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character."

From the language in the statute, at least four requirements for an enforceable security interest in farm products appear: (a) There must be a security agreement; (b) the debtor must sign

Evans v. Everett

it; (c) the collateral must be described; and (d) the land on which the crops are to be grown must be described. Although not explicit in the statute, a reading of the definition of "security agreement" ("an agreement which creates or provides for a security interest." N. C. Gen. Stat. 25-9-105(1)(h)) suggests that some grant of a security interest is required. One treatise writer, formerly a Comment writer for Article 9, disagrees:

> "Article 9 distinguishes not only between 'security interest' and 'security agreement' but between 'security agreement' and 'financing statement.' When a security interest is perfected by filing, the document which is placed on record is referred to as a 'financing statement.' Confusingly and unnecessarily, the formal requisites of the security agreement (§ 9-203) and the formal requisites of the financing statement (§ 9-402) are not the same. Under § 9-203, all that is required in the 'security agreement' is the debtor's signature and a description of the collateral (plus, in some cases, a description of land). Under § 9-402, however, the 'financing statement' must contain the signatures of both the secured party and the debtor and must also give addresses for both of them. The financing statement must also contain descriptions of collateral and, in some cases, of land: the § 9-402 'description' provision does not exactly mesh with the § 9-203 'description' provision . . . Certainly, nothing in § 9-203 requires that the 'security agreement' contain a 'granting' clause." Gilmore, Security Interests in Personal Property, Volume I, Sec. 11.4, p.p. 346-348.

One case which considers the view that no grant of a security interest is required is *In re Walter W. Willis, Inc.*, 313 F. Supp. 1274 (N.D. Ohio, 1970):

> " . . . [T]here is authority in the Official Comments to the Code that the agreement need not contain language that creates or provides for a security interest. In particular, Comment No. 1 to O.R.C. § 1309.14 [Official Comment 1 to N. C. Gen. Stat. 25-9-203], in pertinent part, reads as follows:
>
>> 'The only requirements for the enforceability of non-possessory security interest in cases not involving land are (a) a writing; (b) the debtor's

signature; and (c) a description of the collateral
or kinds of collateral. (Typically, of course, the
agreement will contain much more.) * * *'

Conspicuously absent in this Comment is the requirement
that the agreement contain language that a security interest
was being created or provided for. One commentator has
also noted that nothing in the Uniform Commercial Code
requires that a security agreement contain a clause grant-
ing a security interest."

After stating the foregoing proposition, District Judge Lambros
noted that cases which have applied the terms of the statute
have rejected the view that language creating or providing for
a security agreement is not required.

[1] Some grant of a security interest is needed, then. What
words will be enough to create a security interest? "[U]nder
*Code Ann.* § 109A-9-203 [N. C. Gen. Stat. 25-9-203] the security
agreement *must be in writing but not in any particular form.*"
*Citizens & Southern Natl. Bank v. Capital Const. Co.,* 112 Ga.
App. 189, 144 S.E. 2d 465. In *In re Nottingham,* 6 U.C.C. Rep.
Ser. 1197, (E.D. Tenn., Ref. in Bankruptcy, 1969), the Referee
in Bankruptcy said:

"There are no magic words that create a security
interest. There must be language, however, in the instru-
ment which when read and construed leads to the logical
conclusion that it was the intention of the parties that a
security interest be created. . . . The requirements of the
Code for creating a security interest are simple—an inten-
tion to create a security interest is all that need be shown
—a dozen words or less are sufficient, but the security
agreement must contain language that meets this simple
requirement."

The language needed for a security agreement and the wide
variety of forms in which the necessary language can be found
are discussed in the following quotation:

"Any written agreement signed by the debtor, which
recites that certain described property is being encum-
bered as security for a debt, will operate to create a security
interest; and such an instrument would be a 'security agree-

ment' as defined in U.C.C. 9-105(1)(h). This instrument could take the form of a security agreement drawn with specific reference to the Code; or an ordinary chattel mortgage would do the job. Trust receipts issued pursuant to a trust receipt loan agreement would be effectual to create a security interest; and some lending institutions which formerly made inventory loans in this state under the Uniform Trust Receipts Act (now repealed in Arkansas) continue to make such loans in Arkansas under the same procedure. See U.C.C. 9-102(2). A security interest could also be created through the pledge of warehouse receipts or other title documents." Meek, "Secured Transactions Under the U.C.C." 18 Ark. L. R. 30, 34.

The task of finding words that provide for or create a security interest remains undone.

Can the note serve as the security agreement in which a security interest is granted? It has been said that a promissory note which does not purport to retain title or create a lien will not qualify as a security agreement. *Central Arkansas Milk Producers Ass'n. v. Arnold*, 239 Ark. 799, 394 S.W. 2d 126. Assuming that collateral is described in a note containing ordinary promissory terms, a security interest is not created. In *Safe Deposit Bank and Trust Company v. Berman*, 393 F. 2d 401, (1st Cir. 1968), the Court said, "A note, even reciting data relating to collateral security is not thereby converted into such an agreement." Our research has disclosed at least one case that holds that a note contained language sufficient to create or provide for a security interest. In *In re Center Auto Parts*, 6 U.C.C. Rep. Ser. 398 (C.D. Calif. 1968), the note read, "This note is secured by a certain financing statement." In *Center*, the Federal trial court, reviewing a decision of a referee in bankruptcy held those words to be sufficient to create or provide for a security interest. The description of the collateral was provided by the financing statement, which, it was stipulated, was the only one between the parties. Even if it were stipulated that the note and the two financing statements in the present case were the only ones between the parties, we do not regard the words, "This note is secured by Uniform Commercial Code financing statement of North Carolina" as a sufficient grant of a security interest and therefore do not consider the reasoning in that case persuasive.

Can the financing statement serve as a security agreement? In one of the earliest cases on this point, the Rhode Island Supreme Court said: "[W]hile it is possible for a financing statement and a security agreement to be one and the same document as argued by claimants, it is not possible for a financing statement which does not contain the debtor's grant of a security interest to serve as a security agreement." *American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 196 A. 2d 150. We have found no authoritative case in which a bare financing statement was held to be sufficient as a security agreement. There are, however, many cases in agreement with *American Card, supra:*

> "In the instant situation, since Rabin can proffer no writing signed by the debtor giving, even sketchily, the terms of the security agreement, it is unenforceable. The financing statement signed by the parties and duly filed with the Secretary of State is no substitute for a security agreement. It alone did not create a security interest. It was but notice that one was claimed. *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland . . .* [380 F 2d 355 (4th Cir. 1967)]." *M. Rutkin Elect. Sup. Co., Inc. v. Burdette Elect., Inc.*, 98 N.J. Super. 378, 237 A. 2d 500.

Other cases holding that a bare financing statement does not create or provide for a security interest are *General Electric Credit Corp. v. Bankers Comm. Corp.*, 244 Ark. 984, 429 S.W. 2d 60, and *In re Sanelco*, 7 U.C.C. Rep. 65 (M.D. Fla., Ref. in Bankruptcy, 1969). See also, *Annot.* 30 A.L.R. 3d 9, Secs. 11, 15. In *Kaiser Aluminum and Chemical Sales, Inc. v. Hurst*, 176 N.W. 2d 166 (Iowa 1970) a financing statement and a promissory note dated 9 March 1967 and containing the notation "This note covered by security agreement dated March 9, '67" were executed. The Court held:

> "The cases uniformly hold that a financing statement does not ordinarily *create* a security interest. It merely gives notice that one is or may be claimed. These same authorities hold a financing statement *may* double as a security agreement if it contains appropriate language which grants a security interest. The financing statement now before us contains no language which can be interpreted as granting such an interest."

---

The only language in the financing statement in the instant case that was not present in the one in *Kaiser, supra,* is "same securing note for advanced money to produce crops for the year 1969." We do not regard that language as a sufficient grant of a security interest to cause the present documents, entitled "FINANCING STATEMENTS," to suffice as a security agreement. It, at most, is a recital of what the parties expected to do.

Affirmed.

Judges BROCK and MORRIS concur.