STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

COUNTY OF MECKLENBURG        00-CVS-12302

CARAUSTAR INDUSTRIES, INC.,

            **Plaintiff,**                **ORDER and OPINION**

      **v.**

  **GEORGIA-PACIFIC
CORPORATION,**

            **Defendant.**

{1}   **THIS MATTER** is before the Court on Defendant Georgia-Pacific Corporation's motion, pursuant to N.C. R. Civ. P. 12(b)(6), to dismiss Caraustar Industries, Inc.'s claim for specific performance. The motion is granted.

> *Robinson, Bradshaw & Hinson by Everett J. Bowman and A. Ward McKeithen, for Plaintiff.*

> *Hunton & Williams by A. Todd Brown, Douglas M. Garrou, Nash E. Long, III, and Thomas G. Slater, for Defendant.*

I.

{2}   Caraustar Industries, Inc. ("Caraustar") and Georgia-Pacific Corporation ("G-P") are parties to a requirements contract ("Contract") dated April 10, 1996. The Contract continued through August 20, 2005, unless extended or terminated as provided in the Contract. Pursuant to the Contract, Caraustar agreed to sell to G-P, and G-P agreed to buy from Caraustar, 100 percent of certain paper products used by G-P to manufacture wallboard at specifically listed wallboard manufacturing plants. G-P also gave Caraustar the option of extending the Contract to cover certain wallboard manufacturing plants acquired by G-P after the effective date of the Contract. One of the central issues in the case is which paper products are covered by the Contract.

{3}   In November 1997, Caraustar gave notice to G-P of its intent to exercise its option to extend the Contract to cover a newly acquired G-P manufacturing plant in Savannah, Georgia. G-P refused to purchase certain of its requirements for paper products at the Savannah plant from Caraustar, thereby allegedly breaching the Contract.

{4}   In July 2000, G-P advised Caraustar that G-P would not purchase 100 percent of its requirements for certain paper products from Caraustar, thereby allegedly breaching the Contract.

{5}   Caraustar filed a complaint asserting breach of contract and anticipatory breach of contract claims in August 2000. In its original complaint, Plaintiff claimed damages to be in excess of $100 million. In its amendment to the complaint, filed in October 2000, Caraustar added claims asserting that it suffers irreparable injury for which it does not have a full and adequate remedy at law. Caraustar claims it is entitled to specific performance of the contract and preliminary and permanent injunctive relief enjoining G-P to perform all of its obligations under the contract. The motion to dismiss is addressed solely to the claim for specific performance.

{6}   There is no provision in the Contract for remedy in the event of breach.

{7}   North Carolina law governs the Contract.

## II

{8}  When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true.  *See Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 473 S.E.2d 680, 682 (1996).  The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a legal certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.  *See id.*

## III

{9}  Article 25, North Carolina's version of the Uniform Commercial Code [U.C.C.], applies to transactions in goods.  N.C.G.S. § 25-2-102 (2000).  The paper products at issue in this dispute are goods as defined by the statute.  N.C.G.S. § 25-2-105.

{10}  The motion to dismiss raises the issue of whether the U.C.C. permits supplemental equitable remedies such as specific performance for a seller as a remedy for non-acceptance or repudiation, even though section 2-708 states:

> Seller's damages for non-acceptance or repudiation.
>
> (1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (G.S. 25-2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (G.S. 25-2-710), but less expenses saved in consequence of the buyer's breach.
>
> (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (G.S. 25-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

{11}  Defendant argues that section 2-708 provides the only remedies available to the seller in the event of breach, and, absent a specific provision in the Contract, equitable remedies such as specific performance are generally not available. Hence, Defendant contends that the determination of the seller's damages is controlled by section 2-708 and therefore is limited to lost profits.  N.C.G.S. § 25-2-708.

{12}  Conversely Plaintiff argues that the statute specifically provides that principles of equity may supplement its provisions. Plaintiff relies on the language in N.C.G.S § 25-2-103, which provides: "Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions."  Plaintiff contends that specific performance is an appropriate remedy given the circumstances of this case.

{13}  Defendant relies on *Martin v. Sheffer,* 102 N.C. App. 802, 403 S.E.2d 555 (1991) for the proposition that the seller's damages are controlled by section 2-708.  In *Martin*, a breach of contract case involving a transaction in goods, defendants counterclaimed for full performance of the contract pursuant to a specific performance clause in the contract between the parties.  *Id.* Plaintiffs argued that the U.C.C. provided the sole remedy available to the seller.  *Id.* at 804, 403 S.E.2d at 556.  The court held that "[a] contractual provision expanding seller's damages upon breach of the buyer will . . . be upheld where the contractual provision is reasonable and in good faith."  *Id.*  In reaching its decision, the court referenced section 2-719, which states "a contract for the sale of goods may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article."  *Id.*  Hence, the court started from the premise that unless otherwise indicated in the

contract between the parties, the U.C.C. provided the sole remedies available to the seller.

{14}    The Plaintiff cites *Martin* to support its reliance on cases in other jurisdictions that find that the U.C.C. does not displace equitable remedies.  Plaintiff relies on the following statement in *Martin*:  "While this is a case of first impression in this jurisdiction, cases from other jurisdictions serve as guidance and explanation as to the purpose of the [U.C.C.], which is to make uniform the law among the various jurisdictions."  *Id.* at 805, 403 S.E.2d at 557 (quoting *Evans v. Everett,* 10 N.C. App. 435, 437 179 S.E.2d 120, 122, *rev'd on other grounds,* 279 N.C. 352, 183 S.E.2d 109 (1971).  However, the *Martin* court made the above statement, in support of its reliance on *Frank LeRoux, Inc. v. Burns,* 4 Wash. App. 165, 480 P2d 213 (1971).  *Martin,* at 805, 403 S.E.2d at 557.  The court in *Frank LeRoux, Inc.* upheld a specific performance clause after finding that "absent such a provision . . . plaintiff would be limited in his remedies to [the U.C.C.]."  *Id.*  at 170, 480 P.2d at 216 (1971).  There are no North Carolina U.C.C. cases imposing remedies outside those provided by the U.C.C., absent specific contractual provisions authorizing such remedies.

{15}    This Court finds *Martin* controlling and holds that: as a general rule, U.C.C. § 2-708 provides the sole remedies available to the seller in the event of breach by the buyer; and, therefore, the remedy of specific performance is displaced unless specifically provided for in the contract between the parties.

{16}    There are three reasons underlying this Court's holding.  First, it is clear from *Martin* that the parties to a requirements contract can negotiate a specific performance remedy if they agree to do so.  The parties in this action are large sophisticated businesses negotiating at arm's length and could have provided by contract for the remedy sought by Caraustar.

{17}    Second, the statutory scheme of the Uniform Commercial Code supports a conclusion that the drafters of the U.C.C. intended to displace the equitable remedy of specific performance with the remedies provided therein.  Courts should determine whether a particular provision of the U.C.C. was intended to displace common law.  *Equitable Life Assurance Soc. v. Okey,* 812 F.2d 906, 909 (4th Cir. 1987).  *Okey* involved a U.C.C. cause of action that overlapped with a common law cause of action, creating a conflict in the standard of care giving rise to liability.  *Id.*  The court in *Okey* held that where such a conflict existed, the U.C.C. was clearly intended to displace the common law.  *Id.*  As in *Okey,* imposing the equitable remedy of specific performance conflicts with the remedies provided the seller in sections 2-708 and 2-709.  Section 2-709 (3) provides that "[a]fter the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated . . ., a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under the preceding section . . . 2-708."  The U.C.C. could have provided for specific performance, but did not.  In other instances, it does provide for specific performance.  *See* N.C.G.S. § 25-2-716.  At least one commentator has explained the rationale behind the U.C.C. scheme of remedies in the following terms: "[T]he [U.C.C.] drafters have generally denied the price to a seller of goods not yet accepted because he is usually in the business of selling goods of the kind in question, is likely to have better market contacts and is therefore in a better position to salvage by redisposing of the goods through his normal channels." James J. White & Robert S. Summers, *Uniform Commercial Code,* 332-33 (3rd ed. 1988).  The system of remedies provided by the U.C.C. is an integral part of the overall scheme, and the Court should interpret its provisions in a way that will further its underlying policies and purposes.  *See Rushton v. Shea*, 423 F. Supp. 468, 471 (D. Del. 1976).

{18}    Finally, one of the underlying purposes of the U.C.C. was to create uniformity among the states in commercial transactions.  The scheme of remedies was a part of that effort.  If each state could alter the scheme of remedies by substituting common law specific performance for the U.C.C. remedies, that uniformity would be lost and the U.C.C. scheme of remedies diminished.

{19}    Defendant's motion to dismiss is granted and Plaintiff's claim for specific performance is dismissed.

It is so ORDERED, ADJUDGED and DECREED.

This is the 26th day of January 2001.

Ben F. Tennille
Special Superior Court Judge
for Complex Business Cases