98 N.J. Super. 378 (1967)
237 A.2d 500
M. RUTKIN ELECTRIC SUPPLY CO. INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BURDETTE ELECTRIC, INC., A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 20, 1967.
*381 Mr. Robert E. Cowen, receiver pro se.
Mr. Theodore C. Mirabella for B.J. Builders, Inc.
Mr. Lawrence Cooper for Milton Rabin (Messrs. Schapira, Steiner & Walder, attorneys).
MINTZ, J.S.C.
Defendant Burdette Electric, Inc. (Burdette) was adjudicated an insolvent corporation on June 26, 1964 and a receiver was appointed.
Among the accounts receivable held by Burdette was one owed by B.J. Builders, Inc. This account receivable was allegedly assigned by Burdette to one Milton Rabin by reason of advances to Burdette on certain promissory notes made by it to Rabin dated February 19, 1964 and March 4, 1964.
A financing statement, signed by both parties, was filed with the Secretary of State on March 6, 1964. Demand was made upon Rabin to produce a security agreement in support of this transaction but he failed to do so, and this court necessarily concludes that no written security agreement was ever executed by Burdette.
The matter is now before this court on the receiver's motion for an order declaring the said assignment null and void.
Initially, Rabin objects to the summary disposition of his claim to the account receivable in this receivership proceeding. He urges that as against strangers to the record who hold property adversely to the insolvent company, or who are indebted to the insolvent company at the time of the appointment of the receiver, the latter must proceed in an independent, plenary action against such party. In support of this contention he cites Grobholz v. Merdel Mortgage Investment Co., 115 N.J. Eq. 411 (E. & A. 1934), and Jersey City Welding & Machine Works, Inc. v. Hudson County White Co., 116 N.J. Eq. 548 (E. & A. 1934). These cases *382 are factually distinguishable in that they involved money claims by the receiver against a third party, and the courts there held that such claims should not be summarily decided in the receivership proceeding. However, disputed liens on property in the possession of the receiver are usually determined in a summary manner in the cause in which the receiver was appointed. Riedinger v. Mack Machine Co. etc., Inc., 117 N.J. Eq. 334 (Ch. 1934). In 19 N.J. Practice (Skills and Methods), § 254, at p. 221, the author indicates that summary proceedings, inter alia, are available for the determination of the validity of liens and encumbrances claimed upon property vested in the receiver. It is further stated therein that:
"Assets in the hands of the receiver are deemed to be in the hands of the court and are thereby withdrawn from the jurisdiction of all other courts. Thus, the appointing court has ancillary power to hear and determine all questions respecting title, possession and control of property in its hands and all liens thereon."
As between the assignor and assignee, the party who exercises the larger measure of control over an account receivable is deemed to be in "possession" of the same. Rabin apparently notified the account debtor of his interest before the institution of the receivership proceeding. Hence, it may be argued that the receiver is not in the actual "possession" of the account receivable in question, and therefore a plenary proceeding may be required to test the validity of the assignment. Cf. New York Credit Men's Ass'n v. Manufacturers Discount Corp. 147 F.2d 885 (2 Cir. 1945); Schwartz v. Horowitz, 131 F.2d 506 (2 Cir. 1942); In re I. Greenbaum & Sons Co., 6 F. Supp. 245 (S.D.N.Y. 1933).
In passing, it is to be observed that under the Uniform Commercial Code the concept of "possession" of an account receivable is treated differently than in receivership jurisdictional disputes. As will hereinafter appear, an account receivable is an intangible and cannot be the subject of "possession" under the Code. Though summary jurisdiction *383 may not be invoked because the lien of the adverse claimant is on property probably not in the receiver's possession, there is still another ground upon which such summary jurisdiction may be based. Since our insolvency statute is essentially a bankruptcy act, we may look to the bankruptcy rules for guidance. Sullivan v. James Leo Co., 124 N.J. Eq. 317, 326 (E. & A. 1938); Riedinger v. Mack Machine Co. etc., Inc., supra; Grobholz v. Merdel Mortgage Investment Co., supra.
The bankruptcy court may summarily decide the merits of an allegedly adverse claim where the claim is found to be merely "colorable" and not "substantial." James Talcott, Inc. v. Glavin, 104 F.2d 851 (3 Cir. 1939), certiorari denied 308 U.S. 598, 60 S.Ct. 130, 84 L.Ed. 501 (1939). Dictum to the same effect appears in a state insolvency proceeding, Tager v. Coronet Curtain Corp., 128 N.J. Eq. 537, 543-544 (Ch. 1941).
It has been held that:
"* * * having the power in the first instance to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. And if found to be merely colorable the court may then proceed to adjudicate the merits summarily; * * *." Harrison v. Chamberlin, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1925).
A claim is to be deemed substantial when the claimant's contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy, in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense. Harrison v. Chamberlin, supra. Before the enactment of the Uniform Commercial Code, the Third Circuit in applying this rule held that on a chattel mortgage a clearly defective affidavit of consideration, N.J.S.A. 46:28-5, rendered the *384 adverse claim of the mortgagee as only "colorable" with no fair doubt as to its invalidity. Accordingly, the mortgagee's claim was the subject of summary disposition within the bankruptcy proceeding. In re Rock Spring Water Co., 140 F.2d 566 (3 Cir. 1944). Thus, it appears that if Rabin's claim is unsubstantial, or at best "colorable," this court may summarily dispose of it in this proceeding.
Unenforceability would render Rabin's alleged security interest "colorable" at best. N.J.S.A. 12A:9-204(1) provides in part:
"(1) A security interest cannot attach until there is agreement * * * that it attach and value is given and the debtor has rights in the collateral. * * *"
The debtor, Burdette Electric, had rights in the collateral, and Rabin, the alleged secured party, advanced value. But, as noted earlier, Rabin has failed to produce a written security agreement to document his acquisition of a security interest in the B.J. Builders account receivable. Thus, Rabin's claim falls unless he can prove the existence of some form of enforceable "agreement" which provides that his security interest in the account receivable be created.
N.J.S.A. 12A:1-201(3) defines "agreement" as:
"* * * the bargain of the parties in fact * * *. Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; * * *."
New Jersey Study Comment, Note 2, to N.J.S.A. 12A:9-204 indicates that in order to ascertain whether an "agreement" to attach a security interest has legal sufficiency, N.J.S.A. 12A:9-203(1), chapter 9's statute of frauds must also be considered. The Study Comment reads:
"The requirement that there must be an agreement must be read not only in connection with § 1-201(3), but also in connection with § 9-203 which requires that the security agreement be written (see, Comments, § 9-203) unless the collateral is in the possession of the *385 secured party. So much of § 9-204(1) as requires an `agreement' expressing an intent that a security interest be created makes no change in New Jersey law. * * *" (at p. 383)
Accordingly, in order for an "agreement" to arise, signifying the creation of an unforceable security interest, either the collateral must be in the possession of the secured party or the debtor has signed a security agreement which contains a description of the collateral. N.J.S.A. 12A:9-203(1). An account receivable is an intangible and as such cannot be "possessed" within the meaning of the Code. Coogan and Gordon, "The Effect of the Uniform Commercial Code upon Receivables Financing," 76 Harv. L. Rev. 1529, fn., at p. 1537 (1963); Introductory Commentary to Title 12A, 9, in N.J.S.A. 12A, at p. 313.
Hence, "possession" is unavailable to Rabin as a means of signifying an agreement with the insolvent that the security interest attach. A security interest in an account receivable must be evidenced by a security agreement signed by the debtor and containing a description of the collateral. Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 380 F.2d 355 (4 Cir. 1967). But contra see 76 Harv. L. Rev. supra, at p. 1544. In the instant situation, since Rabin can proffer no writing signed by the debtor giving, even sketchily, the terms of the security agreement, it is unenforceable. The financing statement signed by the parties and duly filed with the Secretary of State is no substitute for a security agreement. It alone did not create a security interest. It was but notice that one was claimed. Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, supra.
Hence, the alleged assignee Rabin has no enforceable security interest in the account receivable in question and the same is vested in the receiver. Rabin's claim that he holds a security interest through an assignment is unsubstantial and only colorable at best. Accordingly, it is the subject of summary disposition in this proceeding.