**KAISER ALUMINUM & CHEMICAL SALES, INC., Appellant,**

**v.**

**Frank R. HURST, Evelyn M. Hurst, Huntting Elevator Company and Rendahl & Highum, Inc., Appellees.**

**No. 53896.**

Supreme Court of Iowa.

April 7, 1970.

Livingston, Day, Kehoe, Meeker & Bates, Washington, for appellant.

Elwood & Anderson, Cresco, for Frank R. Hurst.

Morrison, Morrison & Morrison, Washington, for Rendahl & Highum, Inc.

George R. Laub, Cresco, for Huntting Elevator Co.

LeGRAND, Justice.

This was tried as a law action without a jury. It requires a determination of only one issue: was certain corn owned by Frank R. Hurst and sold by him to Huntting Elevator Company and Rendahl & Highum, Inc. impressed with a security interest in favor of plaintiff, Kaiser Aluminum & Chemical Sales, Inc. The trial court found against plaintiff on this issue and we affirm.

Prior to trial plaintiff dismissed its action against Evelyn M. Hurst, named as one of the defendants, and she is not involved in this appeal.

Plaintiff, and its predecessor in interest, sold fertilizer and other supplies to defendant· Frank R. Hurst in 1966. On March 9, 1967, he executed a promissory note in the amount of $5901.91 in payment of this account. The note contained the following handwritten notation: "This note covered by security agreement dated March 9, '67." A financing statement was executed by Frank R. Hurst and Evelyn M. Hurst and by plaintiff. This financing statement was filed in the recorder's office in Howard County, Iowa, on March 15, 1967. No security agreement was signed, either then or later.

Thereafter Frank R. Hurst sold some of his corn to Huntting Elevator Company

for $2729.61. He also sold corn to Rendahl & Highum for more than $14,000.00.

Defendant Hurst did not pay his note, and plaintiff started this action to collect the amount thereof. Plaintiff also asked judgment against Huntting Elevator Company and Rendahl & Highum, Inc. under an allegation that each of said companies "took possession of crops in which plaintiff had a security interest and converted said crops to its own use."

Plaintiff relies upon the claim that execution of the promissory note and financing statement, together with the filing thereof, created a security interest in the property.

■ The Uniform Commercial Code was adopted in this state by the Sixty-first General Assembly in 1965. We have not heretofore been called upon to decide the question now presented. However, where the issue has arisen, it has invariably been resolved against the position taken by plaintiff. The cases uniformly hold that a financing statement does not ordinarily *create* a security interest. It merely gives notice that one is or may be claimed. These same authorities hold a financing statement *may* double as a security agreement if it contains appropriate language which grants a security interest. The financing statement now before us contains no language which can be interpreted as granting such an interest.

It is apparent a financing statement was not intended under the Uniform Commercial Code to serve as a security agreement. Section 554.9402, Code of Iowa, provides in part:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. *A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. * * *"* (Emphasis supplied.)

Quite obviously if the security interest may come into existence *after* the financing statement is filed, such statement does not *create* the lien.

■ We hold that the financing statement signed by the parties and filed with the recorder of Howard County afforded plaintiff no security interest in the corn sold by defendant Hurst. Plaintiff's rights here are governed by the provisions of sections 554.9105(1) (h) and 554.9203(1) (b), Code of Iowa. The first of these sections provides:

" 'Security agreement' means an agreement which creates or provides for a security interest. * * *"

The second of these sections provides in part:

" * * * a security interest is not enforceable against the debtor or third parties unless (a) the collateral is in the possession of the secured party; or (b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. * * *"

The Iowa Code Comment contained in Iowa Code Annotated under this section is interesting in a consideration of this matter:

"This provision is in accord with former I.C.A. #556.3 and #556.4, which required chattel mortgages and conditional sale contracts to be in writing in order to be effective against third parties. * * * I.C.A. section 622.34 provides that certain alleged oral contracts which are unenforceable because of the statute of frauds shall be enforced if they are not denied in the pleadings. The Uniform Commercial Code has similar provisions for the sale of goods, section 554.2201, and securities,

section 554.8319. Article 9 [dealing with secured transactions] *contains no such provision, so this section changes Iowa law."* (Emphasis supplied.)

See also Uniform Commercial Code Comment #5, page 319, 35B Iowa Code Annotated, supporting this interpretation.

These statements are in accord with decisions reached in other jurisdictions. American Card Company v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150, 152, holds that a financing statement may serve also as a security agreement, but only if it contains language required to create such an agreement. The court said, "* * * While it is possible for a financing statement and a security agreement to be one and the same document as argued by claimants, it is not possible for a financing statement which does not contain the debtor's grant of a security interest to serve as a security agreement."

The court there further said, "The financing statement which the claimants filed clearly fails to qualify also as a security agreement because nowhere in the form is there any evidence of an agreement by the debtor to grant claimants a security interest. * * *" This is the identical situation confronting us in the case at bar.

A similar result was reached in M. Rutkin Electric Supply Company, Inc. v. Burdett Electric, Inc., 98 N.J.Super. 378, 237 A.2d 500, 504, where it was held a financing statement signed by the parties and duly filed is no substitute for a security agreement and that such a statement alone does not create a security interest.

Further authority is found in Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 4 Cir., 1967, 380 F.2d 355, 356, and in General Electric Credit Corp. v. Bankers Commercial Corporation, 244 Ark. 984, 429 S.W.2d 60, 62. See also In re Rand reported in 6 U.C.C. Reports 1129.

This matter has received attention in numerous law review articles offering varying opinions, not all of which are entirely consistent with these views. See 25 Pittsburgh Law Review 619; 18 Arkansas Law Review 34; 22 Miami Law Review 67; 30 Texas Bar Journal 847; 17 Drake Law Review 143; 49 Iowa Law Review 1269.

Even giving full observance to section 554.1102, Code of Iowa, which directs us to liberally construe chapter 554 "to promote its underlying purposes and policies," we cannot ignore the plain language of section 554.9203(1) (b) which makes mandatory a security agreement *in writing* before an asserted security interest may be enforced. It is impossible to find any writing here which satisfies that section's requirements.

We hold the trial court was correct in awarding judgment for plaintiff against Frank R. Hurst and in dismissing plaintiff's petition as to Huntting Elevator Company and Rendahl & Highum, Inc.

Affirmed.

All Justices concur except UHLENHOPP, J., who takes no part.