**In the Matter of DEAN AND JEAN FASHIONS, INC., Bankrupt.**

**No. 70–430.**

United States District Court,
W. D. Oklahoma.
June 30, 1971.

Thomas J. Lee, Paul G. Darrough, Oklahoma City, Okl., for Hugh and Willa Jean Lawson.

Norman E. Reynolds, Robert C. Bailey, Oklahoma City, Okl., for trustees.

## MEMORANDUM

DAUGHERTY, District Judge.

The trustee applied to the Referee in Bankruptcy for permission to sell the assets of the bankrupt estate of Dean and Jean Fashions, Inc., free and clear of liens and encumbrances. In response, Hugh R. Lawson and Willa Jean Lawson asserted that they had a valid and subsisting lien against the inventory, accounts receivable, fixtures and equipment in the amount of $834.97. After hearing, the Referee in Bankruptcy held that the trustee's right to the proceeds of the sale was prior and superior to that of the Lawsons and subordinated the claims of the Lawsons to all other claims. The Lawsons have filed their petition for review of that order.

The Referee has filed his findings of fact which are fully supported by the record. The court is required to accept such findings of the Referee unless they are clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following Sec. 53; Rules 52(a) and 53(e), Federal Rules of Civil Procedure, 28 U.S.C.A.

The Lawsons operated as a partnership in the name of Dean and Jean's commencing in early 1966. In July, 1968, a corporate charter was acquired, but the business was operated as a partnership without perfecting the corporation until approximately November of 1968. The business continued to operate in the same name. Mr. and Mrs. Lawson were the sole stockholders and directors of the corporation. At the time of the incorporation, the partnership inventory was valued at $30,000.00. The Lawsons were each issued $1,500.00 worth of stock in the company and took a note from the corporation dated October 5, 1968, in the amount of $27,419.97 for the balance of the merchandise belonging to the business. Successive notes for cash were taken by the Lawsons as follows: November 14, 1968, $3,000.00; December 10, 1968, $5,000.00; February 18, 1969, $3,500.00; March 15, 1969, $6,400.00. On April 29, 1969, three financing statements were filed in the Office of the County Clerk of Oklahoma County. No. 060765 covered the inventory to secure the October 5, 1968, note and the November 14, 1968, note. No. 060766 covered the furniture and fixtures to secure the note dated February 18, 1969. No. 060767 covered the accounts receivable to secure the promissory note dated December 10, 1968, and the note dated March 15, 1969. When the Petition in Bankruptcy was filed, neither Mr. nor Mrs. Lawson held a security agreement from the company granting them a security interest in any of the company assets. The Lawsons presented to the Referee a Security Agreement purportedly dated October 5, 1968, granting to them a security interest in:

"All inventory (ladies wearing apparel)

All furniture and fixtures

All of the accounts receivable

As reflected on the September 30, 1968, Balance Sheet of Dean & Jean Fashions, Inc."

It recited that the security interest was given to secure the payment of the $27,419.97 note. The Referee found that this Security Agreement was prepared after the filing of the Petition in Bankruptcy and had been back-dated.[1]

---

1. This finding is amply supported by the evidence. The Petition in Bankruptcy was filed on March 19, 1970. Willa Jean Lawson, at the first meeting of creditors on April 21, 1970, testified that she signed this Security Agreement about one week before this meeting.

The new corporation had no real capital contribution other than a few pictures and equipment of a relatively nominal value. The business was insolvent from approximately the end of September 1969 until the commencement of the bankruptcy proceedings, which condition was known both to Mrs. Lawson and her husband. During this period because Mr. Lawson needed the money in his construction business, the company paid him on his notes the following sum:

| NOTE | DATE OF PAYMENT | AMOUNT |
|---|---|---|
| **1** | | |
| October 5, 1968 note in the amount of $27,419.97 | October 25, 1969 | $4,000.00 principal and $1,919.40 interest |
| | December 19, 1969 | $5,500.00 principal and $ 334.28 interest |
| | January 5, 1970 | $3,000.00 principal |
| | January 10, 1970 | $5,000.00 principal |
| | January 22, 1970 | $5,000.00 principal |
| | February 2, 1970 | $3,000.00 principal and $ 113.44 interest |
| BALANCE DUE ON NOTE | | $1,919.19 |
| **2** | | |
| November 14, 1968 note in the amount of $3,000.00 | September 18, 1969 | $3,000.00 principal paid in full |
| **3** | | |
| December 10, 1968 note in the amount of $5,000.00 | August 10, 1969 | $5,000.00 principal paid in full |
| **4** | | |
| February 18, 1969 note in the amount of $3,500.00 | September 18, 1969 | $3,500.00 principal paid in full and $ 346.00 interest |
| **5** | | |
| March 15, 1969 note in the amount of $6,400.00 | | no payments |

In order to make these payments to assist Mr. Lawson in meeting the obligations of his construction business, the inventory was drastically reduced. The closing inventory on December 31, 1969, was around $35,000.00. When the Petition in Bankruptcy was filed, the inventory was around $12,000.00. Much of the merchandise was sold at a figure substantially below cost, and a considerable portion was sold at seventy-five percent reduction.

The Petitioners assert first that the Referee erred in denying a lien to the claimants on the proceeds accruing from the sale of the assets of the corporation. However, when the Referee found as a fact that no security agreement was executed prior to bankruptcy, the result must necessarily obtain that

the Lawsons had no security interest in the assets. A security interest cannot attach until there is an agreement that it attach. 12A O.S.A., Sec. 9–204. This agreement must be in writing. 12A O.S.A., Sec. 9–203. The recorded financing statements were inadequate for this purpose. This court stated in the matter of Mitchell v. Shepherd Mall State Bank et al., 324 F.Supp. 1029 (1971):

> "The financing statement does not ordinarily create a security interest. See Mid-Eastern Electronics, Inc., v. First National Bank, 380 F.2d 355, (4 CA 1967); American Card Company v. H. M. H. Company, 97 R.I. 59, 196 A.2d 150; Kaiser Aluminum & Chemical Sales, Inc., v. Hurst, 176 N.W.2d 166, (Iowa 1970); Central Arkansas Milk Producers Association v. Arnold, 239 Ark. 799, 394 S.W.2d 126, (1965). The Security Agreement creates and defines the security interest."

An unperfected security interest is subordinate to the rights of a lien creditor. The Trustee in Bankruptcy has the rights of a "lien creditor" from time of bankruptcy. (See 11 U.S.C.A. § 110(c) (1–3) and 12A O.S.A., Sec. 9–301(3). In In re Lehner, 303 F.Supp. 317, 318 (D.C.Colo. 1969), the court stated:

> "Sec. 70(c) of the Bankruptcy Act confers on the trustee the 'status of a creditor then holding a lien by legal or equitable proceedings at the time of bankruptcy on all property on which a creditor of the bankrupt could have obtained such a lien at bankruptcy.' 4A Collier, Bankruptcy, ¶ 70.45, at 558 (14th ed. 1969). This status gives the trustee the ability to challenge the validity of prior transfers, liens or encumbrances so that property not subject to perfected security interests may be included in the bankrupt's estate."

The alternative suggestion, by the Petitioners, that although there may not have been a security interest perfected in law, they nevertheless were entitled to an equitable lien, must also fail. Whether an equitable lien exists at all is a question to be determined in accordance with state law. Collier on Bankruptcy, 4A:70.87(3) (14 Ed. 1969). This rule has been recognized by the Tenth Circuit in Seymour v. Wildgen, 137 F.2d 160 (CA 10 1943), in which the court held that what property belonged to the bankrupt as of the date of bankruptcy, what liens, if any, existed thereon, validity of such liens, order or priority among creditors having liens and other cognate questions are governed by the law of the state and not by any provision of the Bankruptcy Act.

Note 5 of the U.C.C. Comment following 12A O.S.A., Sec. 9–203 states:

> "The formal requisites stated in this Section are not only conditions to the enforceability of a security interest against third parties. They are in the nature of a Statute of Frauds. Unless the secured party is in possession of the collateral, the security interest, absent a writing which satisfied subsection (1) (b), is not enforceable even against the debtor, and cannot be made so on any theory of equitable mortgage or the like. If he has advanced money, he is of course a creditor and, like any creditor, is entitled after judgment to appropriate process to enforce his claim against his debtor's assets; he will not, however, have against his debtor the rights given a secured party by Part 5 of this Article on Default. The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgment and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing."

In the Bankruptcy Act, 11 U.S.C.A., Sec. 96(a) (6) provides:

"The recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section * * * "

and 11 U.S.C.A., Sec. 107(c) (1) (b) further provides:

"(c) (1) The following liens shall be invalid against the trustee: * * *

(b) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists * * *."

There is no basis for the allowance of an equitable lien to the Lawsons.

■ Not only did the Referee deny to the Lawsons the priority of a secured claim, he ruled that their claims were subordinate to those of any other general creditor of the estate. This, we think, was proper. The officers and directors of the corporation act in a fiduciary capacity. Palmer v. Stokely, 255 F.Supp. 674 (W.D.Okl.1966). The bankruptcy court, in passing on allowance of claims, sits as a court of equity. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The extent of its equitable powers and the rules to be applied in situations similar to the present case are well stated in the Pepper case:

"That equitable power also exists in passing on claims presented by an officer, director, or stockholder in the bankruptcy proceedings of his corporation. * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." (P. 306, 60 S.Ct. p. 245.)

" * * * In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder." (Pp. 307, 308, 60 S.Ct. p. 246.)

"Though disallowance of such claims will be ordered where they are fictitious or a sham, these cases do not turn on the existence or non-existence of the debt. Rather they involve simply the question of order of payment. At times equity has ordered disallowance or subordination by disregarding the corporate entity. That is to say, it has treated the debtor-corporation simply as a part of the stockholder's own enterprise, consistently with the course of conduct of the stockholder. But in that situation as well as in the others to which we have referred, a sufficient consideration may be simply the violation of rules of fair play and good conscience by the claimant; a breach of the fiduciary standards of conduct which he owes the corporation, its stockholders and creditors. He who is in such a fiduciary position cannot serve himself first and his *cestuis* second. He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty. He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters. He cannot by the use of the corporate device avail himself of privileges normally permitted outsiders in a race of creditors. He cannot utilize his inside information and his strategic position for his own preferment. He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly. He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how abso-

lute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the *cestuis*. Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation." (Pp. 310, 311, 60 S.Ct. p. 247.)

It is readily apparent from the record that Mr. Lawson, by reason of his insider position, achieved a preferment. In the race of creditors he was first, because he and his wife made the decision whom to pay first. Mrs. Lawson testified:

"Q Now, why did the corporation suddenly decide, December and January, to pay this $22,500 to you and your husband?

A Well, the note was over a year old and it was, it could have been, my husband asked that it be repaid, it was owed to him. He needed money.

Q The corporation had a number of other creditors at the same time, did they not?

A Yes, sir.

Q Were any efforts made to pay your other creditors?

A They all demanded payment in full and as you can see, we could not have paid them in full.

Q I am sure. Several of my clients had accounts of less than $3,000. I am inquiring why you paid yourself and ignored other corporate creditors?

A Well, as I said, the corporation owed my husband the money and he needed the money." (Tr. pp. 48 and 49.)

The statement made by the court in Boyum v. Johnson, 127 F.2d 491, 494 (CA 8 1942) is directly applicable to the facts of this case:

"The record shows that the bankrupt was essentially a one-man corporation. Boyum was the controlling stockholder and virtually ran the affairs of the corporation. His general dealings with the corporation were not on the arm's length plane of the other creditors. The cash advances which he made were apparently necessary to supply a deficiency in working capital. From their amounts, duration, and continuing need, they were hardly mere ordinary commercial incidents, but rather part of a plan of permanent, personal financing, to avoid the necessity of increasing the capital of the corporation. Boyum note claims, therefore, cannot be said to occupy an equal equitable position with the other general claims and should accordingly be subordinated to them."

Knowing the company to be insolvent and within ninety days of bankruptcy, the Lawsons took out of the company over $22,500. (See Tr. p. 35.) We cannot ignore this close proximity to the bankruptcy. In In re Kansas City Journal-Post Co., 144 F.2d 791, 804, the court commented:

"Hence, it would seem that an improper use or appropriation of corporate assets by a fiduciary, which has occurred in reasonable proximity to the bankruptcy and while the corporation is insolvent, so that the bankruptcy results are directly affected by it, may constitute such an inequity against other creditors as to entitle the court to deal with it by appropriate and measured subordination of any claim asserted by the fiduciary against the estate regardless of whether the appropriation is directly connected with the claim itself."

Petitioner contends that the act of the Referee cannot be justified because there was no showing of fraud attributable to the claimants. In rejecting this argument on facts remarkably parallel to the facts of this case, the court in Costello v. Fazio, 256 F.2d 903, 910 (CA 9 1958), said:

"This is not the rule. The test to be applied, as announced in the Taylor [Taylor v. Standard Gas & Elec-

tric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669] case and quoted above, is whether the transaction can be justified 'within the bounds of reason and fairness.' In the more recent Heiser [v. Woodruff] case, supra, 327 U.S. [726] pages 732–733, 66 S.Ct. [853] at page 856 [90 L.Ed. 970], the Supreme Court made clear, in these words, that fraud is not an essential ingredient:

> ' * * * In appropriate cases, acting upon equitable principles, it [bankruptcy court] may also subordinate the claim of one creditor to those of others in order to prevent the consummation of a course of conduct by the claimant, which, as to them, would be fraudulent *or otherwise inequitable.* * * *' (Emphasis supplied.)"

There the court regarded as very significant that the partners withdrew immediately before incorporation most of their capital contribution to the business by taking notes therefor from the partnership, so that the company was seriously undercapitalized. Here the Referee found the new company was grossly undercapitalized. It is immaterial that the note taken was from the corporation rather than the partnership. The Lawsons had in effect withdrawn partnership capital in the form of merchandise which they then purported to sell to the company. This transaction occurred in contemplation of incorporation. They were serving in a fiduciary relationship to the corporation and actually withdrew assets already committed to the business. They stripped the business of ninety percent of its assets. The Lawsons violated the rules of fair play and, in equity, should not be accorded parity treatment with the other creditors.

To the question presented by this review, "whether or not the Referee erred in subordinating the claims of Mr. and Mrs. Hugh Lawson to all other claims in this estate and ruling that the Trustee's right to the proceeds from the sale of assets was prior and superior to that of the Lawsons," we must then answer that he did not. The order of the Referee was proper and his action is affirmed.