## THE L AND V COMPANY *v.* ASCH, Trustee for The Revel Craft Manufacturing Company

[No. 85, September Term, 1972.]

*Decided December 6, 1972.*

The cause was argued before BARNES, SINGLEY, SMITH and DIGGES, JJ., and WILLIAM J. O'DONNELL, Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*Leon H. A. Pierson,* with whom were *Pierson & Pierson* on the brief, for appellant.

*Mitchell Stevan,* with whom was *Howard A. Rubenstein* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, The L and V Company (L and V), was denied a preferred claim on April 7, 1972, by order of George Sachse, J., of the Circuit Court for Anne Arundel County, in a receivership case following an assignment by L and V for the benefit of its creditors. The principal question is whether or not L and V's financing statement perfected an enforceable security in the assets of Revel Craft Manufacturing Company, the insolvent debtor (Revel), pursuant to Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 9-203 (1) (b) and the definition set forth in § 9-105 (1) (h), the Uniform Commercial Code (UCC).

On December 15, 1968, the President of L and V, the appellant, was authorized by the Board of Directors to lend up to $200,000 to Revel. Later that day, the President of Revel was authorized to borrow up to $300,000 for the corporation "and to give a note or notes as security therefor . . . ." [1]

Pursuant to this arrangement, a total of $142,500 was loaned between December 31, 1969, and February 21, 1970. A total of $67,500 had been repaid as of February 12, 1970, when three notes were executed in the amounts

---

1. In *copies* of the minutes of Revel authorizing the transaction, the language was "notes *and* [vs. "as"] security therefor" (Emphasis supplied.) ; but counsel for L and V, with commendable candor, stated at the argument before us that the word "as" was used in the original minutes.

of $30,000, $40,000 and $5,000, respectively, for the balance of $75,000. A security agreement, however, was not executed at this time. These notes were payable on demand and authorized any attorney of any court of record to confess judgment against Revel. An interest rate of 8% per annum was stated, but no part of the principal or interest has been repaid.

On October 28, 1969, prior to the making of the three notes of February 12, 1970, a financing statement was recorded among the records of the Circuit Court for Anne Arundel County, showing "The Revel Craft Manufacturing Company" as debtor and "The L and V Company" as the secured party. It covered "All of the furniture, furnishings, machinery, fixtures, new materials for manufacture, incomplete work in process, finished products on the premises (before shipment), monies on hand and in banks, and accounts receivable, belonging to the Revel Craft Manufacturing Company and being located at its premises at Arnold, Maryland."

There is no date of execution of the financing statement; but it is signed by representatives of Revel, the debtor, and L and V, the secured party. There was evidence in the record to show that the financing statement was signed prior to the making of the three notes in question.

On July 29, 1971, the Revel Craft Manufacturing Company executed a deed of trust for the benefit of its creditors to Jerome M. Asch, Trustee, the appellee in this case. The Circuit Court for Anne Arundel County assumed jurisdiction over the deed of trust proceedings on July 30, 1971. Subsequently, on October 1, 1971, Revel executed a chattel mortgage to L and V, which covered in detail the same assets as were described in the financing statement. L and V then filed a petition for a preferred claim with the court on November 24, 1971, apparently based on the chattel mortgage, the three notes totalling $75,000 and the financing statement. This petition was denied by order of George Sachse, J. of the Circuit Court for Anne Arundel County on April 7, 1972. We affirm that order.

The chattel mortgage executed after the assignment of assets to the trustee cannot serve as a security agreement. After executing a deed of trust for the benefit of creditors, the assignor has no rights or title to the property which he can convey or encumber. The trustee acquires all rights which the assignor had in the property, *Tatelbaum v. Pantex Mfg. Corp.*, 204 Md. 360, 104 A. 2d 813 (1954), subject only to the encumbrances which existed at the time of the assignment. *Kellas & Co. v. Slack & Slack Co.*, 129 Md. 535, 99 A. 677 (1916). After the assignment, Revel could not execute a chattel mortgage effective against the trustee on the property already held by the trustee.

The sole issue presented to us, then, is whether the appellant, L and V, had an enforceable security interest on the basis of the notes and financing statement alone which would entitle it to a preferred claim. We hold that L & V cannot have an enforceable security interest because there was no security agreement signed by the debtor, Revel, as required under Art. 95B, § 9-203 (1) (b).

Section 9-203 (1) (b) provides: "a security interest is not enforceable against the debtor or third parties unless . . . [t]he debtor has signed a security agreement." A security agreement is defined in Section 9-105 (h) as "an agreement which creates or provides for a security interest." These sections of the Uniform Commercial Code have been consistently interpreted by courts as requiring a writing in which the debtor *grants* a security interest to the security party. In the opinion of the leading case of *American Card Co. v. H.M.H. Co.*, 97 R. I. 59, 196 A. 2d 150 (1963), it was stated:

> ". . . it is not possible for a financing statement which does not contain the debtor's *grant* of a security interest to serve as a security agreement." (Emphasis supplied.)
> 97 R. I. at 62, 196 A. 2d at 152.

The great weight of authority supports the holding in

*American Card. See Mitchell v. Shepherd Mall State Bank,* 458 F. 2d 700, 703 (10th Cir. 1972) ; *Scott v. Stocker,* 380 F. 2d 123, 127 (10th Cir. 1967) ; *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland,* 380 F. 2d 355, 356 (4th Cir. 1967) ; *In re Carmichael Enterprises, Inc.,* 334 F. Supp. 94 (N.D. Ga. 1971) ; *In re Dean & Jean Fashions, Inc.,* 329 F. Supp. 663 (W.D. Okla. 1971) ; *In re Mann,* 318 F. Supp. 32, 34 (W.D. Va. 1970) ; *In re Platt,* 257 F. Supp. 478 (E.D. Pa. 1966) ; *Evans v. Everett,* 279 N. C. 352, 183 S.E.2d 109 (1971) ; *Needle v. Lasco Industries,* 10 Cal. App. 3d 1105, 1108, 89 Cal. Rptr. 593, 595 (1970) ; *Kaiser Aluminum & Chemical Sales, Inc. v. Hurst,* 176 N.W.2d 166, 167 (Iowa 1970) ; *General Electric Credit Corp. v. Bankers Commercial Credit,* 244 Ark. 984, 986-87, 429 S.W.2d 60, 62 (1968) ; *M. Rutkin Electric Supply Co. v. Burdette Electric,* 98 N. J. Super. 378, 384-85, 237 A. 2d 500, 504 (1967) ; *In re Tile Unlimited, Inc.,* 8 U.C.C. Rep. 750 (Bankruptcy Ct. W.D. Wis. January 1971) ; *In re Weiner's Men's Apparel, Inc.,* 8 U.C.C. Rep. 104 (Bankruptcy Ct. S.D. N.Y. March 1970) ; *In re Schreiber,* 7 U.C.C. Rep. 365 (Bankruptcy Ct. W.D. Wis. November 1969) ; *In re Nottingham,* 6 U.C.C. Rep. 1197 (Bankruptcy Ct. E.D. Tenn. September 1969) ; *In re Rand,* 6 U.C.C. Rep. 1129 (Bankruptcy Ct. D. Me. August 1969) ; *In re Center Auto Parts,* 6 U.C.C. Rep. 398 (C.D. Calif. August 1968) ; *In re Martronics, Inc.,* 2 U.C.C. Rep. 364 (Bankruptcy Ct. D. Conn. November 1964) ; *In re Freese,* 2 U.C.C. Rep. 656 (Bankruptcy Ct. E.D. Pa. August 1964).

Although we have not previously ruled upon the question presented in this appeal, two of our prior decisions contain some indication of our opinion in regard to the separate functions of a financing statement and a security agreement. In *Plemens v. Didde-Glaser, Inc.,* 244 Md. 556, 563, 224 A. 2d 464, 468 (1966), we considered a filed financing statement to determine if it was effectively executed and filed. Judge Marbury, for the Court, stated:

"No personal liability is created by the execution of a financing statement. The creation of liability between the parties is the purpose of the execution of a security agreement or other instrument. The financing statement is a paper separate and apart from the security agreement itself, although a copy of the agreement may suffice as the financing statement if it is signed by both parties and meets the other requirements of Section 9-402. . . . A signed financing statement is filed for the purpose of showing that the statement is genuine and can be accepted for filing. . . . The purpose of recording financing statements under the Code is to provide any interested party, not with all the information he needs to understand a security transaction, but only with the information that such a transaction has taken place and that the particulars may be obtained from the named secured party at the address shown as provided in Section 9-208."

In *Household Finance v. Bank Commissioner*, 248 Md. 233, 239, 235 A. 2d 732, 735 (1967), we addressed ourselves to the question of whether a recorded financing statement, as such, was a recorded lien or evidence of obligation under the Maryland Industrial Finance Law, Code (1957, 1968 Repl. Vol.) Art. 11, §§ 163-205. We concluded that in the absence of an outstanding security agreement, a recorded lien or evidence of obligation it was not inasmuch as, in the words of Judge Horney, for the Court:

"* * * there is no conflict between the provisions of § 197(5) of the I.F.L. and the provisions of the U.C.C. for the simple reason that a financing statement is not a 'recorded lien or evidence of obligation' within the meaning of that section which, according to the commissioner, must be released upon the refinancing of

a security transaction. . . . the financing statement (in that it contains none of the characteristics of a formal lien such as the amount loaned, the maturity date and the time when installment payments are due) does not purport to be anything more than a method of giving notice of the probability that the secured party has a security interest in the stated collateral."

*See also* the interesting comments of Professor Alphonse M. Squillante of the College of Law of Drake University in *Commercial Code Review—A Summary of Leading Decisions and Articles,* 74 *Commercial Law Journal* 366 (December 1969). Commenting on *In re Rand, supra,* written by Conrad K. Cyr, Referee in Bankruptcy in Bangor, Maine, Professor Squillante states:

"The Code clearly indicates, in § 9-402(1) that a copy of the security agreement is sufficient as financing statement if it contains the required information (above) and is signed by both parties. The security agreement contains a grant of security interest to the creditor and is evidenced by the debtor's signature. Thus the Code, apparently, wishes to protect the debtor by requiring a definite, clear, grant of a security interest to the creditor. In a logical fashion, then, a financing statement, to serve as a valid security interest, must do likewise or grant the security interest. This can be accomplished by including the elements required by § 9-402, plus words indicating an agreement that the debtor wishes to extend to the creditor a security interest, in addition to signatures of both parties. This would then, clearly, evidence an agreement between the parties of their intention to transform the financing statement and a security agreement."

*Id.* at 369-71.

In view of the impressive array of authorities, *supra,* we will not depart from their holdings, especially in light of the statement by the General Assembly that one of the underlying purposes of the UCC is "to make uniform the law among the various jurisdictions," Art. 95B, § 1-102 (2) (c).

Counsel for L and V, while admitting that the great weight of authority is opposed to its contention, nevertheless, forcefully urges us to decline to follow the holdings of the previously decided cases in other jurisdictions because those holdings place "an unfortunate gloss . . . upon the statute by over-technical courts." He points to the criticism of *American Card* by Professor Gilmore, one of the draftsmen of Article 9 of the UCC, in 1 Gilmore, *Security Interests in Personal Property,* at 347 (1965), as well as the critical comments in 6D Benders, *Uniform Commercial Code Service, Reporter's Digest* 2-1680 (1972).

In our opinion, these criticisms are not well founded. The filing of a financing statement *may* indicate the existence of a security agreement and, indeed, if it contains language which *grants* to the creditor a security interest, it may then serve both as a financing statement *and* a security agreement. *Plemens, supra.* There is no language in the UCC to make a financing statement, without words granting a security interest, the equivalent of a security agreement. The granting words are necessary to indicate the intention of the parties to create a security interest; and in the absence of such words, it seems rather clear that the parties did not intend to create a security interest. *See, e.g., In re Nottingham, supra.* There is often a vast difference between what *may* happen and what *does* happen. The instant case illustrates this. The promissory notes did not purport to create a security interest in the Revel chattels and other personal property and hence L and V received no such interest. This is pointed up by the ineffective attempt by Revel to execute a chattel mortgage purporting to give a security interest in the personal prop-

erty *after* the assignment for the benefit of creditors had been executed by Revel.

> *Order of April 6, 1972, affirmed, the costs to be paid by the appellant.*