**PIONEER HI–BRED INTERNATION-AL, INC., Appellant–Defendant,**

v.

**KEYBANK NATIONAL ASSOCIATION, Appellee–Plaintiff.**

No. 44A04–0002–CV–83.

Court of Appeals of Indiana.

Jan. 18, 2001.

Susan R. Hanson, Joseph J. Jensen, Tuesley & Hall, South Bend, IN, Attorneys for Appellant.

Patricia E. Primmer, Jeffrey A. Johnson, May, Oberfell & Lorber, South Bend, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Pioneer Hi–Bred International, Inc. ("Pioneer") appeals the judgment of the

trial court in favor of Keybank National Association ("Keybank") in the amount of $229,082.37 plus pre-judgment interest of $38,754.40.

We affirm.

### ISSUE

Whether the trial court erred in granting partial summary judgment in favor of Keybank.

### FACTS

Keybank, formerly known as Society Bank, is a for-profit corporation authorized to provide financial services in Indiana. Pioneer is a for-profit corporation in the business of developing new seed corn hybrids. PHI Financial Services, Inc. ("PHI") is a wholly-owned subsidiary of Pioneer and provides financial services in Indiana. Edd's Supplies, Inc. is an Indiana corporation in the business of selling farm supplies.

Harold and Sharoldine Carpenter ("the Carpenters") are farmers who reside and own property in Shipshewana, LaGrange County, Indiana. To maintain their farm, the Carpenters have executed and renewed notes issued by Keybank on an annual basis since 1995. In consideration of the notes, the Carpenters granted Keybank a security interest in their real and personal property, including the products of their land. Keybank filed the necessary security agreements and financing statements with the Secretary of State and the Recorder of LaGrange County.

The Carpenters purchased their farming supplies from Edd's Supplies on credit from 1995 through 1997. To generate income and repay their loans, the Carpenters had entered into seed corn production agreements with Pioneer from 1995 through 1997.[1] "Pioneer provided [Ha-

---

1. Harold Carpenter and Pioneer signed the    hybrid seed corn production agreement in

rold] Carpenter with the seed, retaining ownership in the seed and the plants grown from the seed." Pioneer's Brief at 4. "After Harvest, the corn was trucked to a Pioneer plant and then measured." *Id.* at 4. Harold Carpenter would then be paid for the bushels produced. On February 12, 1997, the Carpenters obtained a loan from PHI and signed a contract compensation assignment with it. The agreement assigned to PHI all interests in the compensation derived from the sale of crops grown with the seed provided by Pioneer. The compensation would then be used to repay the money lent from PHI. As of December 16, 1997, the balance due was $37,885.76. PHI "did not file a UCC–1 financing statement in relation to the February loan nor did it otherwise inform Keybank of the same." (R. 483).

On August 13, 1997, the Carpenters signed three separate term and renewal notes effective from March 29, 1997. The renewals were based on notes executed in 1995. Keybank issued these term and renewal notes for the following amounts: (1) $1,071,135.00; (2) $400,000.00; and (3) $228,650.00. In return, the Carpenters again granted Keybank a security interest in their real and personal property, including their crops. The Carpenters then executed a security agreement containing the names, addresses, and signatures of the Carpenters and Keybank. The security agreement prohibited the Carpenters from moving, allowing another to possess, or selling the collateral, except for inventory. A description of the collateral and the property where the crops were located was also attached to the security agreement. The Carpenters also provided Keybank with a list of the parties to which they regularly sold their crops; Pioneer was on this list.

On August 16, 1997, Keybank mailed a certified letter return receipt requested to Pioneer. The letter provided a notice of Keybank's security interest and included copies of the financing statements. Lan-

nie M. Hulse ("Hulse"), a Pioneer employee, signed for the letter in the course of her duties and responsibilities.

On August 18 and 19, 1997, financing statements containing the names, addresses, and signatures of the Carpenters and Keybank were filed with the Secretary of State and the LaGrange County Recorder's Office. Descriptions of the collateral and the property where the crops were located were attached. The security agreement and the financing statements described the collateral as follows:

> . . . all farm products and inventory consisting of livestock and growing crops, including, but not limited to, potatoes, grains, wheat, barley, oats, hay, corn, beans and similar farm products and inventory, whether now owned or existing or hereafter acquired or arising, whether for sale, lease, storage, handling, processing, furnishing or to be furnished under a contract of service, use or consumption, wheresoever located, including all accessories, accessions, additions, increases, replacements, substitutions, returns and repossessions thereof and thereto, including, but not limited to:
>
> (i) all growing, harvested and/or stored crops, annual or perennial, and all other products of the crops;
>
> (ii) all feed, food supplements and additives, seed, fertilizer, medicines, herbicides, fungicides, and other supplies used, consumed, or produced in the Borrower's farming operation; and
>
> (iii) all other farm products and inventory of Borrower of every nature and description whatsoever;
>
> and all after acquired farm products and inventory of all of the foregoing, . . .

(R. 166, 169, 172).

On December 16, 1997, Pioneer issued a check jointly payable to Edd's Supplies

April 1997 for that year.

and Harold Carpenter for $140,925.87 as compensation for the 1997 crop proceeds. On December 18, 1997, another check for $50,270.74 was issued to the same parties. Pioneer also remitted $37,885.76 from these proceeds to PHI to satisfy the outstanding debt.

During 1998, the Carpenters defaulted on their loans issued by Keybank. On June 9, 1998, Keybank filed an Amended Complaint for Foreclosure, Replevin, and Appointment of Receiver. Pioneer filed its answer and cross-complaint against Edd's Supplies and Harold Carpenter on August 6, 1998. On February 1, 1999, Keybank filed its Second Amended Complaint for Replevin, Appointment of Receiver, and Other Relief. In its complaint, Keybank alleged that it had a perfected security interest in the Carpenter's crops as collateral for the loans. As a result, Keybank alleged that Pioneer converted the collateral when it paid Harold Carpenter and Edd's Supplies with the proceeds of the seed corn sale.

On February 2 and 17, 1999, the relevant parties and witnesses were deposed. Terry Gardner ("Gardner"), plant manager for Pioneer, and Michael Teter ("Teter"), assistant plant manager, stated that they had not received notice of Keybank's security interest in the Carpenter's crops for 1995, 1996, or 1997. Paul Hostetler ("Hostetler"), an employee of Edd's Supplies, stated that in 1995, he met with Harold Carpenter and Victor Nantz ("Nantz"), supervisor of Keybank's loans to the Carpenters. Hostetler said that they all orally agreed that Edd's Supplies would be paid the seed corn proceeds. Nantz stated that no such agreement existed and that in 1997, he had mailed a certified letter informing Pioneer of Keybank's security interest.

On June 8, 1999, Keybank filed its motion for partial summary judgment. On September 10, 1999, the trial court found that there was "no issue of material fact to be determined by the Court on the question of Defendant's liability, and that the

Plaintiff is entitled to a judgment against the Defendant, Pioneer, for 1997 crop proceeds which were not remitted to the Plaintiff; the amount of which is in dispute." (R. 481). A brief hearing was held on September 14, 1999 and the parties filed a stipulation of facts and issues on October 4, 1999.

On January 27, 2000, the trial court issued its final judgment. The trial court found that Pioneer's payment to the Carpenters was not in the ordinary course of business, and Keybank had a superior perfected security interest in the proceeds of the Carpenters' seed corn. The trial court also awarded Keybank pre-judgment interest.

## DECISION

Pioneer argues that the trial court erred in granting Keybank's motion for partial summary judgment. Specifically, Pioneer argues that there is a genuine issue of material fact as to whether Keybank waived its security interest in the Carpenter's crops. Further, Pioneer argues that the $37,885.76 remitted to PHI was done in the ordinary course of business.

When reviewing a grant of summary judgment, we shall only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matter designated to the trial court for purposes of the motion. IND.TRIAL RULE 56(C). "[W]e apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Duffy v. Ben Dee, Inc.*, 651 N.E.2d 320, 322 (Ind.Ct.App. 1995) *trans. denied;* IND.TRIAL RULE 56(C).

■ A farmer's crops may serve as collateral in a secured transaction. IND.CODE § 26–1–9–109. In order for a security interest to be effective against third parties, it must have attached to the collateral and

be perfected. *Gibson County Farm Bureau Co-op. Ass'n, Inc. v. Greer*, 622 N.E.2d 551 (Ind.Ct.App.1993). A security interest in crops attaches when (1) the debtor signs a security agreement; (2) the security agreement contains a description of the collateral and the property where the crops are located; (3) value is given; and (4) the debtor has rights in the collateral. IND.CODE § 26–1–9–203. Perfection of a security interest in crops occurs when the secured party files a financing statement in the county of the debtor's residence. IND.CODE §§ 26–1–9–302; 26–1–9–401. A financing statement is sufficient if it contains, the names, addresses, signatures of both parties, and a description of the collateral and property. IND.CODE § 26–1–9–402.

A perfected security interest is superior to an unperfected security interest. IND.CODE § 26–1–9–301. Further, a secured creditor also has a perfected interest in the proceeds from the sale of the collateral, unless authorized by the secured party in the security agreement or otherwise. IND.CODE § 26–1–9–306(2). "A secured creditor has a cause of action for conversion against a third party buyer of property in which it holds a perfected security interest. However, to sustain a conversion action, the plaintiff must positively demonstrate that the property purchased by the defendant was the property in which it held a security interest." *Fifth Third Bank of Southeastern Indiana v. Bentonville Farm Supply, Inc.*, 629 N.E.2d 1246, 1252 (Ind.Ct.App.1994) *trans. denied* (citation omitted).

A security interest can be waived if the "secured party gives express [written] consent and authority to a debtor to sell contrary to the terms of a security agreement, . . . ." *Anon, Inc. v. Farmers Production Credit Ass'n of Scottsburg*, 446 N.E.2d 656, 659 (Ind.Ct.App.1983). In that case, we noted that where security agreements do not contain any reference to the sale of collateral, a court may look beyond the agreement to determine the

intent of the secured party. *Id.* (citing *Fisher v. First National Bank of Memphis*, 584 S.W.2d 515 (Tex.Civ.App.1979)).

Congress has also legislated in the area of secured transactions where farm products are concerned. 7 U.S.C. § 1631 (1985). Noting that a buyer of farm products can be subject to double liability, "once at the time of purchase, and again when the seller fails to repay the lender," the statute was enacted as follows:

(d) Except as provided in subsection (e) and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.

(e) A buyer of farm products takes subject to a security interest created by the seller if—

(1)(A) within 1 year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest . . .

*Id.*

In this case, it is undisputed that Keybank has a perfected security interest in the Carpenters' seed corn produced during 1997. The question before us is whether Keybank waived its security interest. *See Mercantile Bank of Springfield v. Joplin Regional Stockyards, Inc.*, 870 F.Supp. 278 (W.D.Mo.1994) (holding that 7 U.S.C. § 1631 does not preempt state common law regarding waiver). Pioneer argues that Harold Carpenter, Nantz, and Hostetler had an unwritten understanding that Edd's Supplies was to be assigned the proceeds from the sale of the Carpenters' crops for 1995, 1996, and 1997 despite Keybank's security interest. Therefore, Pioneer claims that Keybank voluntarily

relinquished its rights to the seed corn proceeds.

The record is unclear as to whether such an agreement existed. However, this does not necessarily mean that partial summary judgment was erroneously granted. We may find that "[d]espite a conflict in facts and inferences on some elements of a claim, summary judgment may be proper when no dispute exists with regard to the facts which are dispositive of the litigation." *Hayden v. Linton–Stockton Classroom*, 686 N.E.2d 143 (Ind.Ct. App.1997). Here, determination of whether Pioneer received notice of Keybank's security interest under 7 U.S.C. § 1631 within one (1) year of the 1997 seed corn sale is dispositive of the litigation.

In this case, the seed corn sale was completed on December 18, 1997, the date the second disputed check was issued by Pioneer. *Cf. Matter of McDonald*, 224 B.R. 862 (Bankr.S.D.Ga.1998) (statute's phrase, "within one (1) year before the sale", means at the completion of the sale and does not refer to the signing of the initial contract). Although Pioneer claims that it is unable to find its copy of the notice, the record shows that Keybank mailed a certified letter and Hulse signed the return receipt. The letter complied with the requirements of the federal statute by containing the required names, addresses, social security numbers, and signatures. *See* 7 U.S.C. § 1631(e)(1)(A)(ii). Additionally, the letter notified Pioneer of Keybank's security interest in the proceeds from the sale of the Carpenter's crops and contained copies of the financing statement and descriptions of the collateral and property. Pioneer was also notified that copies of the financing statements would be filed with the Secretary of State and the LaGrange County Recorder's Office. Further, the letter advised Pioneer that it could protect itself by paying over the proceeds by check jointly payable to Keybank and the Carpenters.

These facts are undisputed and support the trial court's granting of Keybank's motion for partial summary judgment. Because Pioneer had notice "within one (1) year before the sale," it was subject to Keybank's security agreement concerning the proceeds of the 1997 seed corn agreement. Because PHI's security interest was unperfected, Keybank's perfected security interest is superior and it is entitled as a matter of law to all the proceeds. *HCC Credit v. Springs Valley Bank & Trust*, 712 N.E.2d 952 (Ind.1999).

Finally, Pioneer cites *HCC Credit* as holding that payments made in the ordinary course of business are "taken free and clear of any claim that a secured party may have in the proceeds." Pioneer's Brief at 12. This reading is incorrect. *HCC Credit* holds that "a recipient of a payment made 'in the ordinary course' by a debtor takes that payment free and clear of any claim that a secured party may have in the payment as proceeds." *Id.* at 956. Pioneer did not receive any payment from a debtor, but PHI did. Therefore, the trial court did not err in granting partial summary judgment.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.