FARM CREDIT SERVICES OF MID–AMERICA, ACA n/k/a Farm Credit Services of Mid–America, FLCA, Appellant–Petitioner,

v.

In the Matter of the UNSUPERVISED ADMINISTRATION OF THE ESTATE OF Norman B. MITCHELL, Deceased, Appellee–Respondent.

No. 41A04–0210–CV–497.

Court of Appeals of Indiana.

June 26, 2003.

James S. Kowalik, J. Bradley Schooley, Hostetler & Kowalik, PC, Indianapolis, IN, Attorneys for Appellant.

Jack Rogers, Rogers & Gesse, Franklin, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Farm Credit Services of Mid–America, FLCA ("FCS") appeals from the probate court's ruling in favor of the Norman B. Mitchell Estate ("the Estate") that the security agreement and financing statement between FCS and the Estate failed to create an enforceable security interest in the crop collateral given the inadequacy of the description of the land concerned.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the ruling reveal that on January 31, 2001, Norman Mitchell executed a promissory note with FCS promising to repay the amount of $25,550.00 to FCS. The terms of the promissory note granted FCS a security interest in the following specified collateral: "Collateral described as follows, including but not limited to collateral located in JOHNSON County, Indiana: All crops growing, grown or to be grown on real estate and all harvested crops and all processed crops, whether or not produced by Borrowers/Debtors." *Appellant's Appendix* at 16. The security agreement further contained the address for Mitchell. Mitchell also executed an accompanying financing statement which purported to grant FCS a security interest in the following described property: "All crops growing, grown or to be grown on real estate and all harvested crops and all processed crops, whether or not produced by Borrower(s)/Debtor(s)." *Appellant's Appendix* at 18. Neither the financing statement or security agreement described the realty where the crops were grown by section, township, range, or by common street address.

Mitchell died on September 12, 2001, while domiciled in Johnson County, Indiana. The Estate was opened by personal representatives and a court order dated October 23, 2001. Standing crops, but no realty, were identified as an asset of the Estate with a value of $45,000.00. The crops were harvested and sold for cash as stated in the personal representatives' inventory.

On December 12, 2001, FCS filed a notice of claim in the amount of $23,158.08. On June 3, 2002, the personal representatives filed a petition to determine classification of FCS's claim and requesting the probate court to make a determination as to the validity of the claim. The personal representatives contended that the security agreement and financing statement were insufficient to create lien rights or a security interest in Mitchell's crops because the documents failed to describe the real estate upon which the crops were grown as specifically required by the Uniform Commercial Code.

On July 17, 2002, the probate court entered an order determining the status of FCS's claim, which stated that under prior law, IC 26–1–9–203, a more detailed description of the realty upon which the crops were grown was required. However, the court erroneously noted that this code section was repealed in 2000[1] and replaced with IC 26–1–9.1–203, which deleted the language requiring a description

---

1. Revised Article 9 of the Uniform Commercial Code took effect July 1, 2001.

of realty upon which growing crops were grown. Following the new Uniform Commercial Code provision, the court held that FCS possessed a valid security interest in the crops. On July 31, 2002, the probate court recognizing its error, entered an amended order stating the IC 26–1–9–203 rather than IC 26–1–9.1–203 controlled. Accordingly, it determined that FCS had an unsecured claim for failing to comply with the detailed description requirement. FCS now appeals.

## DISCUSSION AND DECISION

■ FCS first argues that the security interest properly attached to the crop collateral because it complied with the provisions of IC 26–1–9–203,[2] namely the provision requiring a description of the land concerned. It maintains that the description of the real estate in the security agreement was sufficient to satisfy the requirement. The Estate counters that the description of real estate in the security agreement, i.e., Johnson County, was insufficient to comply with the requirements of the statute, and, therefore, an enforceable security interest in crops was not created and did not properly attach to the crop collateral.

■ A farmer's crops may serve as collateral in a secured transaction. IC 26–1–9–109; *Pioneer Hi–Bred Int'l, Inc. v. Keybank Nat'l. Ass'n,* 742 N.E.2d 967, 970 (Ind.Ct.App.2001), *trans. denied.* In order for a security interest to be effective against the debtor, it must have attached to the collateral. *Gibson County Farm Bureau Co-op. Ass'n, Inc. v. Greer,* 643 N.E.2d 313, 316 (Ind.1994). A security interest in crops attaches when: (1) the

debtor signs a security agreement; (2) the security agreement contains a description of the collateral and the property where the crops are located; (3) value is given; and (4) the debtor has rights in the collateral. IC 26–1–9–203; *Pioneer Hi–Bred,* 742 N.E.2d at 971.

IC 26–1–9–203 provides in pertinent part:

(1) [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to the agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the timing of the attachment.

To obtain the benefits of Article 9 of the Uniform Commercial Code, the secured party must assure that the security interest has attached and is enforceable against the debtor. IC 26–1–9–203. FCS's argument that the description "Johnson County" contained in the security agreement satisfies the requirement of "a description

2. Secured transactions on January 1, 2001, were governed by Indiana's Uniform Commercial Code, IC 26–1–9–101 et seq. Subsequently, Article 9 of the Uniform Commercial Code was revised and became effective July 1, 2001. *See* IC 26–1–9.1–101 et seq. Contrary to FCS's claim, in the present case, we agree with the trial court that the former version of Article 9 applies to this case.

of the land concerned" fails. Although we are mindful that IC 26–1–9–110 states that "any description of . . . real estate is sufficient whether or not it is specific if it reasonably identifies what is described," here, the description "Johnson County" does not reasonably describe the land upon which the crops were to be grown because it does not reasonably identify the land upon which the crops were grown. No street address or legal description was included in the description to provide reasonable identification. According to the Comment section of IC 26–1–9–110, "The test of sufficiency of a description is that the description do the job assigned to it that is make possible the identification of the thing described." Here, given the substantial amount of land used for growing crops in Johnson County, it is impossible for the description used in the security agreement to have sufficiently described the land upon which the crops were to be grown. Because of this failure, FCS did not hold an enforceable security interest in the crop collateral, and its claim must fail. We agree with the probate court's determination that "IC 26–1–9–203 [requires] a more detailed description of the real property upon which crops are grown than was provided here." *Appellant's Appendix* at 5. The trial court did not abuse its discretion in so holding.

Affirmed.

MATTINGLY–MAY and MATHIAS, JJ., concur.